C. A. Balph and E. P. S. Wright, partners as Columbia Fireproofing Co. v. Liberty National Bank, Appellant.

*Contract—Building contract—Architect—Charge of the court—Question for jury.*

Where A gave a general contract to do certain work and afterwards knew that B, a stranger to the contract, was doing part of the work which A's architect testified was done under a contract made by him with B by authority from A, and A denied having given such authority, and alleged that he thought B was doing the work under the general contractors, it is proper for the court to charge that if the architect was authorized to make the contract with B for and on behalf of A, or if A subsequently ratified the act of the architect, A would be liable; or if the contract was not expressly ratified and A, knowing that his architect had assumed to act for him, stood by and permitted B to do the work and expend money upon it, he would be estopped from denying the contract.

Argued Nov. 2, 1896. Appeal, No. 118, Oct. T., 1896, by defendant, from judgment of C. P. No. 3 Allegheny Co., May T., 1895, No. 232, on verdict for plaintiffs. Before STERRETT, C. J., WILLIAMS, McCOLLUM, MITCHELL, and FELL, JJ. Affirmed.

Scire facias sur mechanics' lien.    Before McCLUNG, J.

At the trial it appeared that the plaintiffs claimed to recover for fireproofing placed in defendant's bank building under a contract alleged to have been made with F. J. Osterling, the defendant's architect.

It also appeared that on July 9, 1894, the Liberty National Bank of Pittsburg entered into a written contract with Murphy & Hamilton, builders, for the erection of a large bank building on property owned by the bank at the corner of Penn and Sheridan avenues, in the 19th ward of said city. Under the terms of their contract Murphy & Hamilton were to erect and complete the building, furnishing all labor and materials

therefor, on or before March 1, 1895, for the price or sum of fifty thousand (50,000) dollars,—the work to be done and the building to be erected according to plans and specifications prepared by F. J. Osterling, architect. Murphy & Hamilton entered upon the performance of their contract, and sublet the contract for the fireproofing for the new building called for in the plans and specifications, to the Pittsburg Terra Cotta Lumber Company. Work upon the building progressed satisfactorily until about the middle of December, 1894, at which time the Pittsburg Terra Cotta Lumber Company were at work putting in the fireproofing under the sub-contract with Murphy & Hamilton, the principal contractors. At this time, when most of the fireproofing had been put in the building, the fireproofing began to sink, and very shortly afterwards a part of the third floor fell in, carrying with it a part of the second floor into the first floor, and then, after a conference between Murphy & Hamilton, the principal contractors, and the Pittsburg Terra Cotta Lumber Company, the latter removed all of the fireproofing from the building, except a small portion of the first floor. When this occurred, work upon the building ceased entirely for some weeks. A dispute arose between Murphy & Hamilton and the Terra Cotta Lumber Company and F. J. Osterling, the architect, as to the cause of the disaster. The work stood still until about January 7, 1895, when the architect notified the building committee of the bank that he had let the contract for the fireproofing to the plaintiffs, with the consent of Murphy & Hamilton, the principal contractors. It was admitted that the work was properly done, and no dispute was made about the amount. The bank claimed that the contract was made on behalf of the general contractors, Murphy & Hamilton.

The court charged in part as follows :

Was Osterling authorized to make this contract for the bank? If he was not authorized, did he make it, and was it ratified by the bank ? Or if it was not expressly ratified by the bank, knowing that he had assumed to act for them, did they stand by and allow these parties to do the work and expend their money upon the bank ? In either of those cases the bank would be bound.

Now, what is the testimony as to these matters? Mr. Oster-ling says he made the contract; that he acted in behalf of the bank. And the plaintiffs also say that the contract was made in behalf of the bank; that they had nothing to do with the general contract; didn't hear of any general contract, or any other party. Mr. Osterling says that he was authorized by the bank to make that contract; that when they got into difficulty with respect to certain defective work, and the matter had lain there for some time, the general contractors refusing to do any-thing in the matter, and the subcontractors who had this partic-ular work also refusing to remedy the defects, that the bank authorized him then to take charge of the matter, and it was necessary in order that the work should proceed and the build-ing should be erected. He also states that he was instructed by the building committee that the work was entirely in his hands, and that they looked to him to have it done. He says in pursuance of that he went to these parties and made this con-tract in the name of the bank to have the work done. Now, if the bank authorized him to do this, it is for you to say what this authorization amounted to. If the bank authorized him to make a contract with these parties, or with some parties, to have this work done, and he, under that authority, went and made this contract with these parties, that is an end of this whole matter, and they are entitled to recover.

We have nothing to do with controversies between Murphy & Hamilton and the bank, or any other person. If the bank authorized him to make that contract, and he went and made it, that is an end of it, it being admitted that plaintiffs did the work. But even if they did not authorize it, if they afterwards ratified it, if they were informed that he had made a contract in their name, and they ratified it, they would be bound; or if they learned that he had made a contract in their name to do this work, and they saw the parties with whom he had contracted undertaking to do the work, and stood by and allowed them to do the work, without informing them that this party was with-out authority, they would then be bound. They would be estopped to deny his authority, as is expressed in law, and you perceive that this is nothing but a matter of common fairness and honesty that they could not, if they knew these parties were working under the impression that they were employed by

them, I say they could not stand by and take the benefit of their labor and then repudiate the contract under which they got it. So in that case they would be bound. It is with respect to these last two aspects of the matter that we admitted certain testimony here as to the belief of these parties with respect to the nature of this contract. You will perceive that if they thought that the contract was made with somebody else, was made with Murphy & Hamilton, then their conduct in failing to notify these parties, when they saw them at work there, would not have the same significance as if they knew that the contract had been made in the name of their bank.

As I say, we permitted certain testimony to go in here as to the belief of these gentlemen, and even permitted certain testimony to go in as to what had taken place, what had been told one of the building committee by Mr. Murphy, one of the contractors. If you come this far, although you will recollect all the time, if Osterling was antecedently authorized to make this contract, and made it, that is an end of the case. But if you do not put it on that ground, and come to the question of estoppel, by standing by and allowing the plaintiffs to proceed, you may properly inquire as to what the belief of these parties was as to the nature of this contract. They say they thought they were proceeding under directions from Murphy & Hamilton. It seems that Osterling notified them of the making of this contract. He wound up the notice by saying, in substance, that Murphy & Hamilton had assented to the making of this contract. The position of the plaintiffs and Osterling manifestly is that Murphy & Hamilton had assented to this method of relieving the difficulty, that they practically had assented that the bank might make this contract to put in that fireproofing, and, as a result of that, would have the right to charge it against Murphy & Hamilton, and deduct it from the gross contract. The bank officers say they understood that to mean that Murphy & Hamilton had made this contract; that is, that they had practically constituted Osterling their agent to employ these men to make the contract, and that for that reason they did not think they were called upon to notify these parties not to go on under the contract that Osterling had made. It seems, however, that they at the time, or shortly afterwards, wrote a letter to Osterling, which, it is argued, indicates that they did not so

understand it; that is, that they at least had a suspicion that this contract had been made in their name because they notify Osterling,—not the plaintiffs,—that they won't interfere. And the question is asked why, if they had no suspicion or had no knowledge that this contract was made in their name, did they write that letter. This is a matter for you to determine, whether they were under the belief that Murphy & Hamilton were employing these men, or whether they had knowledge that Osterling had assumed to employ them in their name; it appears that Murphy, of Murphy & Hamilton, had notified, or had told one of the building committee that they had assented to this arrangement. Now, the defendant says that that conveyed to them the idea that Murphy & Hamilton were employing these men. On the contrary, the plaintiffs claim that that was notice to them that Murphy & Hamilton had allowed Osterling to use the name of the bank in making this contract, or had allowed the bank to make this contract, and that the name of the bank had been used in so making it.

You will perceive that the plaintiffs here deal only with Osterling, did not deal in any way with Murphy & Hamilton, and it would appear that either Osterling or this bank is the only party that is liable to them; that, however, is not a matter that is to influence your judgment. You are to determine the question whether or not Osterling was the authorized agent of this bank in making that contract. If he was, the case is at an end and the plaintiffs are entitled to recover. But even if he was not, if he acted in the name of the bank, and the bank, knowing that he had acted in its name, permitted these parties to go on and under that contract to do this work, they would still be bound by it. If you find both these matters in favor of the defendant, then, as a matter of course, they would not be liable.

[Defendant has asked us to instruct you, "If the jury should find from the evidence that F. J. Osterling let the contract for the fireproofing, for which this lien was filed, to the plaintiffs, without consultation with the building committee of the defendant, or without any authority from said committee to let said contract, and that said committee while the work was being done by plaintiffs was of the opinion that said work was being done with the consent and approval of Murphy & Hamil-

ton, the principal contractors, plaintiffs cannot recover in this action and your verdict should be for the defendant."

This is refused. The defendant may be bound by estoppel, even if its committee was of the opinion that said work was being done with the consent and approval of Murphy & Hamilton, if they at the same time knew that Osterling had assumed to contract with plaintiffs in the name and on behalf of defendant, and having this knowledge permitted plaintiffs to do the. work.] [3] The plaintiffs, if entitled to recover, will be entitled to recover this sum of $4,100, with interest from the time at which it should have been paid, about one year ago.

Verdict and judgment for plaintiffs for $4,346. Defendant appealed.

*Errors assigned* were, (1, 2) that the charge was inadequate and unfair; (3) above instruction, quoting it.

*Wm. D. Evans* with him, *Geo. C. Wilson*, for appellant.—Upon the trial of the case there was not even a suggestion that the bank subsequently formally ratified Osterling's act in making. the contract with the plaintiffs, and there was no testimony. offered to show that any member of the building committee, or of the board of directors of the bank, knew that he had made the contract in the bank's name, so that the question for the jury to pass upon narrowed itself down to this : Did the defendant authorize Osterling to make the contract with the plaintiffs ?

When the charge of the court in submitting the case to the jury gives no fair or adequate presentation of the case in its material facts to the jury, or gives undue prominence to the testimony of either side, it is ground for reversal: Burke v. Maxwell, 81 Pa. 139; Penna. Canal Co. v. Harris, 101 Pa. 80; Reichenbach v. Ruddach, 127 Pa. 564; Herstine v. Lehigh Valley R. R., 151 Pa. 244; Dooner v. Delaware & H. Canal Co., 164 Pa. 17; Tietz v. Phila. Traction Co., 169 Pa. 516.

*R. A. Balph*, with him *James Balph*, for appellees.

OPINION BY MR. CHIEF JUSTICE STERRETT, January 4, 1897 :
·This case was fairly and with substantially accurate and adequate instructions submitted to the jury on controlling questions

of fact which were properly presented by the testimony.  The burden was on the plaintiffs to prove that they were employed by the defendant bank to do the work for which the claim was filed, or that the bank became otherwise liable to them therefor. For that purpose they relied mainly on their contract with Osterling, the bank's architect, and circumstances connected therewith.  There was no dispute as to the character of the work done or the amount claimed therefor.  On the question of the bank's liability, the learned trial judge instructed the jury, in substance, that if Osterling was authorized to make the contract with plaintiffs for and on behalf of the bank, or, if the latter subsequently ratified his act, it would be liable; or if the contract was not expressly ratified, and the bank knowing that its architect had assumed to act for it, stood by and permitted the plaintiffs to do the work and expend money on its building, it would be estopped.  In either case the defendant would be bound.

Without specially referring to the testimony in the case, it is sufficient to say it was quite sufficient to warrant the court in submitting these questions of fact to the jury in the way that it did.  For the same reason, there was no error in the court's answer to the only point submitted by the defendant.

There is no sufficient ground for the complaint, that the charge " was not a fair, adequate presentation of the case, especially in that it failed to refer to all the testimony of defendant's witnesses in contradiction of plaintiff's testimony as to Osterling being the authorized agent of the bank in making the contract." The case was fairly and adequately submitted to the jury on all the testimony in the case.  The court was not requested to call the attention of the jury to any such conflict of testimony; and in the absence of such request it was not bound to do so. Neither of the specifications of error is sustained.

Judgment affirmed.