## Morrissey Construction Co., Inc. v. Cross Realty Co.

*Stephen G. Yusem*, for plaintiff.
*Knox Henderson*, for defendants.

SMILLIE, J., February 20, 1967.—The case comes before the court on the preliminary objections of defendants, Leo W. and Helene D. Gable, to the mechanic's lien claim and complaint of plaintiff, Morrissey Construction Co., Inc.

The mechanic's lien claim, which is the basis of the complaint, is one of 83 mechanic's liens filed against the individual lots and buildings of a housing development known as "Highland Gardens", Lansdale, Montgomery County, Pa.

Plaintiff began work on January 16, 1962, and completed it on November 9, 1963. The mechanic's liens were filed on March 6, 1964, and the complaints were filed on February 24, 1966. The total amount due claimant is $57,399.66, or, $691.56 for each property.

The preliminary objections of defendants, Leo W. and Helene D. Gable, assert that their property is immune from the lien claimed for two reasons: first, it is alleged that the work performed by Morrissey did not constitute an improvement; nor was it incidental to the erection, construction, alteration or repair of an improvement within the meaning of the Mechanics' Lien Law; secondly, that the lien must fall because defendants are not now owners and never were owners of the property upon which the work was performed.

Plaintiff relies on the Mechanics' Lien Law of August 24, 1963, P. L. 1175. Section 301, 49 PS §1301, of said law provides:

"Every improvement and the estate or title of the owner in the property shall be subject to a lien, to be perfected as herein provided, for the payment of all debts due by the owner to the contractor or by the contractor to any of his subcontractors for labor or materials furnished in the erection or construction, or the alteration or repair of the improvement, provided that the amount of the claim, other than amounts determined by apportionment under section 306 (b)

of this act, shall exceed five hundred dollars ($500)".

Section 201 of the act, 49 PS §1201, which is the definitional section, provides:

"(1) 'Improvement' includes any building, structure or other improvement of whatsoever kind or character erected or constructed on land, together with the fixtures and other personal property used in fitting up and equipping the same for the purpose for which it is intended.

"(2) 'Property' means the improvement, the land covered thereby and the lot or curtilage appurtenant thereto belonging to the same legal or equitable owner reasonably needed for the general purposes thereof and forming a part of a single business or residential plant. . . .

"(12) 'Erection, construction, alteration or repair' includes:

"(a) Demolition, removal of improvements, excavation, grading, filling, paving and landscaping, when such work is incidental to the erection, construction, alteration or repair;

"(b) Initial fitting up and equipping of the improvement with fixtures, machinery and equipment suitable to the purposes for which the erection, construction, alteration or repair was intended; and

"(c) Furnishing, excavating for, laying, relaying, stringing and restringing rails, ties, pipes, poles and wires, whether on the property improved or upon other property, in order to supply services to the improvement".

Applying the facts to the definitions, the improvement for which the work was furnished was "Highland Gardens", a housing development consisting of 83 lots and houses. On the Gables' lot no. 11, Morrissey constructed the driveway, the sidewalk, curb, storm and sanitary sewer and street appurtenant to lot no. 11, and, as will be shown, the Gables owned the appur-

tenant area. Morrissey's work was not only reasonably needed, but absolutely necessary if the Gables were to occupy the house.

It thus appears from a literal reading of the statute that Morrissey's work was incidental to the erection and construction of a dwelling on the Gables' property, and the lien is valid. However, the enactment of laws governing the creation or extension of liens is restricted by article III, sec. 7 of the Pennsylvania Constitution of 1874, which provides:

"The General Assembly shall not pass any local or special law:

"Authorizing the creation, extension or impairing of liens. . . . "

As the Supreme Court said in Fluke v. Lang, 283 Pa. 54 (1925), speaking of the 1901 Mechanic's Lien Act, the predecessor of the present law:

"The Act of 1901, if it attempts to go beyond this, is pro tanto unconstitutional, because of the provisions of article III, section 7, of the present state Constitution. . . . "

So it is necessary to consider whether plaintiff would have had any right to file a mechanic's lien prior to 1874. The Mechanic's Lien Law of June 16, 1836, P. L. 695, as amended, was the law in effect in 1874. It provided in sections 1 and 2:

"That every building erected . . . shall be subject to a lien for the payment of all debts contracted for work done, or materials furnished, for, or about the erection or construction of the same.

"Section 2. The lien of such debt, shall extend *to the ground covered by such building, and to so much other ground immediately adjacent thereto, and belonging in like manner to the owner of such building, as may be necessary for the ordinary and usual purposes of such building. . . . "* (Italics supplied).

Again, applying that statute to the instant case, we

find the driveway is on the ground of the Gables' lot no. 11, so that there can be no question of the validity of the lien as to such work. The sidewalk, curb, sewer and street work that Morrissey furnished is on the ground immediately adjacent to lot no. 11, and is necessary for the ordinary and usual purpose of the house, for without that work, the house could not be occupied, and there would be no access to the public roads and sewers.

As early as 1896, the court recognized that having a supply of water and carrying off underground drainage as well as the waste products of living is an essential part of habitation. In fact, it is indispensable to healthy, normal dwelling. The modern man has many more luxuries or conveniences than were contemplated at the time of the Constitution of 1874, when there was to be no "extension of liens". The Act of 1836 clearly showed that those things "as may be necessary for the ordinary and usual purposes of such building" are lienable. But merely because a facility is a *"convenience"* or even a luxury does not preclude it also, by its nature, from being an indispensable, necessary feature of living in a building. One cannot confine language that is not horse-and-buggy language of itself to an impossible, unrealistic interpretation. Words as used in 1836 must be construed to apply to living conditions which were in contemplation of normal human progress, not distorted, of course, nor broadened merely to accommodate developments for luxury or pleasure.

No one can say that to dispose of bathroom waste as is done with the plumbing and sewer systems of today in a sanitary manner is a luxury. It is a vital facility for healthy living in a populated area. The sidewalk curb is protection of life and limb from traffic. The paving of the road and street eliminates stagnant pools and chest-congesting dust, which again is a health

necessity of modern living; especially true of development building. Building developments in large clusters are a comparatively new phase of human habitation, but it differs only in degree from the block houses of a few years ago. The streets and curbs are essential to ingress and egress, shielding from neighbor encroachment and giving access to delivery service which supplies the vital necessities of life. No one today can live in the congestion of hundreds of people living in a small area without the protection which sidewalks afford from traffic; the streets afford a roadway to the oil trucks, the baker, the milkman, the trashman, and all the other businesses which must use a paved roadway to furnish essential necessities of life. Thus, it takes no stretch of the language of the Mechanic's Lien Law of 1836 or the Constitution of 1874 to include driveway, sidewalk, street, curb, storm and sanitary sewers as a necessary part of the ordinary and useful purposes of a building under modern living conditions. As the Supreme Court said in Owen & Salter v. Johnson and Schaefer, 174 Pa. 99 (1896), when speaking of plumbing and drainage, but which also applies to streets, sidewalks and driveways:

"Plumbing is recognized by the legislation in relation to mechanics' liens as a part of the work of erection and construction of buildings. It is not a luxury or convenience only, but an essential part of modern city dwellings. The supply of water is indispensable, and underground drainage by which waste can be carried off is enjoined by city ordinance. The prohibition of surface drainage and the use of wells either for the supply of water or as receptacles for waste made a part of the plumbing absolutely necessary. A part of it might have been dispensed with, as might the painting, papering, interior doors, heaters and ranges, and, but a step further, the plastering, and the house have been left a mere inclosure of ex-

terior walls and roof. The question is not what may be dispensed with in the construction of a house, but what is an essential part of the plan of construction. In this case the plan was to supply the houses throughout with water, and to connect them by a system of drainage with the city sewers, and the plumbing was an essential part and a principal division of the work".

So, the lien also is valid under the *specific language* of the 1836 Mechanic's Lien Law.

Defendant, however, maintains that the case law under the Mechanic's Lien Laws of 1836, 1901 and 1963 does not permit the lien.

We are able to find but three appellate decisions dealing with the specific issue of whether plaintiff's work was incidental to the erection or construction of an improvement within the meaning of the Mechanic's Lien Law. They are not recent decisions.

In Yearsley v. Flanigen, 22 Pa. 489 (1854), there was involved the construction of a distillery. The contractor agreed to lay all the bricks for the building, stacks, foundation and pavements. The lower court found the lien could not extend to pavements and charged that if the statutory period of six months under the 1836 Mechanic's Lien Law had passed between the time the work was done, other than the work upon the pavement and the filing of the lien, the lien was lost. The Supreme Court reversed, saying:

"Where a contract is made with a bricklayer to do all the brick and stone work about the erection of a building, which contract by its terms includes the laying of the pavement, as it is an entirety a mechanic's lien may be filed within six months from the completion of the work, even though it may have all been done except the pavement more than six months before the lien was filed. The work upon the pavement may be included in the lien.

"If laying the pavement is done under a separate

contract from that of constructing the walls and other masonry, and six months is suffered to elapse from the last work upon the building proper, before the lien is filed, it is then too late, as it cannot be connected with the work in laying the pavement".

So the paving, when done in conjunction with the construction of a building, as was the case at bar, was lienable under the 1836 law.

Defendants insist that, to be lienable, the paving contract must be part of the building contract. Morrissey did not do any construction on the house itself because the construction on the house was done by the owner and developer of all the project, Cross Realty Co. Morrissey contracted directly with the owner, Cross Realty, for the excavation, grading, paving and sewer construction for the streets, sidewalks, curbs and driveways of "Highland Gardens". The Gables were not even a gleam in Cross Realty's eyes when the contract to build their home was consummated.

Neither the holding nor the dicta of the Yearsley case, supra, restricted paving liens to work done under *a single contract* with *the same person* who constructed part or all of the building.

In Owen & Salter v. Johnson and Schaefer, supra, there was, as in the case at bar, an owner and developer who subdivided a tract of land and erected houses thereon. The owner did all of the work himself except for the plumbing, which was done by Schaefer with materials supplied by plaintiff. The sole question was, since Johnson was both owner and contractor, did Schaefer as a subcontractor have the power to bind the buildings so plaintiff could maintain his lien? The court, upholding the lien, said:

"As to other parts of the construction Johnson was both owner and contractor, but as to the painting and plumbing he was owner only, and for the plumbing Schaefer was the contractor. No other construction

seems possible, unless it be supposed that by undertaking the erection of his own buildings he placed himself as contractor between himself as owner and those with whom he contracted".

Further, the court stated:

"The act of June 16, 1836, P. L. 696, confers the right of lien upon plumbers, and its provisions are extended by the act of April 14, 1855, P. L. 303, to plumbing and gas fitting; there is therefore no doubt that Schaefer is within the class of persons entitled to a lien. The power of a contractor to bind a building for materials furnished is not limited by the fact that the contract is not for the whole building. Where the owner makes contracts for different parts of the work, those furnishing  materials are entitled to a lien as fully as if there had been but one contractor for the whole building: Singerly v. Doerr, 62 Pa. 9".

Again, the decision does not restrict the statutory language of the 1836 Mechanic's Lien Law to work performed under *a single contract* that included work performed on the building.

Bradley v. Gaghan, 208 Pa. 511 (1904), was a case where plaintiff supplied cement in sidewalk paving for three blocks of houses located on and separated by public streets. Plaintiff apportioned the lien among all the houses on the three streets. The Supreme Court, in a per curiam opinion, affirmed the referee's decision for defendant and said:

"The learned referee below found, as facts, first, that these liens are upon different blocks of houses, separated by public streets; second, that the only item of the materials for which the liens are filed, furnished within six months, was furnished indiscriminately to the three blocks, or if to any one of them separately, it was not shown which; third, that the said item consisted of cement which was used partly or wholly in the construction of sidewalks; and fourth that the claims

were not sufficiently proved. On these facts the judgment was right, and it is affirmed on the referee's conclusions of law".

The court's decision was based on the absence of apportioning the work among the houses that were separated by public streets. In the case at bar, Morrissey did apportion the claim among *all the houses*, and the houses were on a *private* street, and not a public street.

Nowhere in the referee's opinion was there discussed the validity of an apportioned claim for paving done on a private street under a separate contract in conjunction with the building of a house.

We conclude that the appellate cases cited do not alter the specific language of the Mechanic's Lien Law of 1836, which would permit the lien by Morrissey.

The lower court cases cited by both parties interpreting the Mechanic's Lien Laws of 1836, 1901 and 1963 are, at best, inconclusive and ambiguous and are inapposite to the issue of the case at bar. We have examined them carefully, and they do not lend any light to the instant set of facts.

The Gables, therefore, have failed to negate the specific language of the Mechanic's Lien Laws of 1836, and 1963, which allow the instant lien.

Defendant's second and last preliminary objection is that the lien must be stricken because they are not and were not owners of the property upon which plaintiff's work was done. The Gables allege that their ownership ends at their lot boundary lines and that the sidewalk and street are public and were never owned by them. Morrissey, however, says that the Gables were the owners of the sidewalk and street at the time the work was performed and that their work fits within the definition of property in section 201(2) of the 1963 Mechanics' Lien Law as quoted before.

It is important to note that on December 8, 1961, the Borough of Lansdale duly approved a subdivision plan for the "Highland Gardens" development and the

plan was recorded. The plan was approved pursuant to the Subdivision Ordinance of the Borough of Lansdale, which is ordinance No. 422 adopted July 9, 1951. Section 2 of the ordinance provides:

"Every street, park or other improvement shown on a subdivision plan that is recorded as provided herein, shall be deemed to be a *private street*, park, or improvement until such time as the same has been offered for dedication and *accepted by ordinance* or resolution or until it has been condemned for use as a public street, park or other improvement". (Italics supplied.)

In light of the above ordinance, the deeds of dedication dated December 12, 1961, and July 10, 1961, from Cross Realty to the Borough of Lansdale were only *offers* to dedicate the street. The offers to dedicate were not accepted by the borough until August 23, 1963. Thus, the work that Morrissey furnished until that date was done to private property owned by Cross Realty and later by Leo and Helene Gable, present defendants.

Atkinson v. Shoemaker, 151 Pa. 153 (1892), involved a claim for lumber amounting to $1535.71, furnished in building 102 houses for the owner-contractor. The sum was apportioned equally among the 102 houses. Defendant, in a rule to strike the lien, maintained that the houses were separated by a public street. Plaintiff, however, maintained that for the purpose of filing a mechanic's lien, the key time period in determining whether a street is public is *at the time the work is commenced.* Said the court:

"The last expression is significant, in that it fixes the time when the rights of mechanics and materialmen attach, viz.: *when the buildings were commenced.* This is in full accord with the spirit as well as the letter of our lien law, and is undoubtedly correct". (Italics supplied).

At the time Morrissey commenced work in the case

at bar, the street and pavement areas were private and, in consonance with the Mechanics' Lien Law, belonged to the same "legal or equitable owner" who were the Gables, defendants.

In conclusion, the Mechanics' Lien Law expressly authorizes liens for the work performed by plaintiff, and the liens are valid.

### ORDER

And now, February 20, 1967, after argument before the court en banc consisting of Robert W. Honeyman, J., Frederick B. Smillie, J., and William W. Vogel, J., the preliminary objections of defendants, Leo W. and Helene Gable, are dismissed and defendants are directed to file an answer to the complaint within 20 days of this date.