## Alan Porter Lee, Inc. *v.* Du-Rite Products Company, Inc. (et al., Appellant).

Argued January 8, 1951. Before DREW, C. J., STERN, STEARNE, JONES, BELL, LADNER and CHIDSEY, JJ.

*John A. Moss*, with him *John A. Clark* and *Moss, Rieser and Bingaman*, for appellant.

*Dawson H. Muth*, with him *Body, Muth, Rhoda and Stoudt*, for appellee.

OPINION BY MR. JUSTICE LADNER, March 19, 1951:

The appellant, intervening defendant in a mechanic's lien proceeding, appeals from a judgment for the

plaintiff entered on a verdict rendered in his favor on the trial of a sci. fa. sur mechanic's lien.

The plaintiff, an engineering corporation, incorporated under the law of New York, filed a mechanic's lien under the Act of June 4, 1901, P. L. 431, as amended (49 P.S. 1 et seq.) against the one-story brick factory building and boiler house and lots or pieces of ground with the curtilage appurtenant thereto, situate in the Borough of Sinking Spring, Berks County, Pa., of which property the Du-Rite Products Company Inc. was owner. The lien claimed $10,822.25 and was averred to be for the "furnishing of engineering services for the design, supervision of construction and initiation of operations of a plant for spray drying of detergent products on the premises of the defendant."

The lien set forth that the services were rendered in accordance with an oral contract by which the claimant "agreed to furnish and did perform all the chemical, mechanical and civil engineering for the establishment of suitable processing machinery, plans and specifications for and toward the erection of a new building and large concrete towers for the spray drying of chemicals, the development of plans and specifications for auxiliary pipe lines, storage vessels, fuel oil installations, steam boiler and steam boiler distribution installations and for the complete plant design and specifications for the erection of the said new buildings and towers and equipment; in accordance with the said oral contract aforementioned, the owner and contractor, the Du-Rite Products Co., Inc., . . . agreed to pay . . . the following rates: For the principal Engineer, Alan Porter Lee, $15.00 per hour, Senior Associates $10.00 per hour, Junior Associates $7.50 per hour, Draftsman $5.00 per hour."

The defendant in the lien, the Du-Rite Products Co. Inc., filed no affidavit of defense to the sci. fa. is-

sued sur lien, but the appellant, the Berks County Trust Co., a lien creditor, intervened by leave of court and did file an affidavit of defense contesting the lien on the ground, inter alia, that claimant furnished only architectural or engineering services for designing of certain alterations to an existing plant and denying he rendered any services of supervision of construction and initiation of operation of the plant. Certain other issues were raised, but in the view that we take of the matter, they need not be considered.

The cause proceeded to trial and resulted in a verdict for the full amount of the appellee's claim. The intervening defendant moved for judgment n.o.v. and from the dismissal of that motion we have this appeal.

While the mechanic's lien law of 1901 as amended, Sec. 3, 49 P.S. 3, apparently extended its benefits to one who merely makes plans, it was held a construction of the Act of 1901 that would extend its benefits to an architect, merely for preparing plans would render it invalid as a special law for extension of liens or as changing the method for collection of debts in contravention of Sec. 7 of Article III of the Constitution of 1874: *Dyer v. Wallace*, 264 Pa. 169, 174, 107 A. 754 (1919). The right of one acting as an architect, planner or designer to file and maintain a mechanic's lien must consequently be referred to and limited by the law as it stood before the Constitution of 1874. The law as it then stood is correctly summarized by Trickett in his "Law of Liens in Pennsylvania," Vol. 1, Sec. 9, p. 11, as follows: "An architect has no lien for merely drawing plans and specifications for the building, though he visits the site of the building before its commencement to explain the drawings to the mechanics; it is otherwise if he is employed to be on the ground during the erection of the building, to make

designs for every part, to direct the execution of the same by the various mechanics, to examine the material employed, to advise with the owner of the building in contracting for every portion of the work or materials, to examine all accounts, etc."

In support of this proposition is cited *Rush v. Able,* 90 Pa. 153 (1879) ; *Price v. Kirk,* 90 Pa. 47 (1879) ; *Bank of Pennsylvania v. Gries,* 35 Pa. 423 (1860). To which we add, as later authority, *Dyer v. Wallace,* 264 Pa. 169, 107 A. 754 (1919) and *Hoekstra v. Hopkins,* 87 Pa. Superior Ct. 15 (1925), where Judge KELLER said at p. 18, "He [an architect] can recover for his plans and drawings in this proceeding only because of the fact that they are incidental to and enhance his work of superintending and supervising the actual construction."

The principal question to be decided on this appeal is whether the evidence at the trial shows the supervision or superintendence required to satisfy the law as just stated. While the lien avers in general terms that engineering services of supervision were rendered, we note that in point of fact, the averment in the lien of the terms of the oral contract does not set forth that claimant was *employed* to *supervise* or *superintend* the construction but merely to plan and design the same, nor do the invoices, annexed to the lien setting forth the detail charges for the time devoted by the engineer or assistants, include any time charged for superintendence or supervision. Moreover, in the lien any visit to the work must rest solely on inference from two invoices, 746, 745, annexed to the lien, which charge merely expenses of the visit to the work and contain no charge for time devoted to superintendence or supervision. However, these defects which we have noted were amendable as of right: *Knoell v. Carey, Sheriff,* 291 Pa. 531, 534, 140 A. 522

(1928), and after trial on the merits, especially as here where the lien had actually been discharged by a sheriff's sale, it may be treated as amended in those respects in which the amendment is of right: *Knoell v. Carey, Sheriff,* supra.

We, therefore, come to the question whether the testimony at the trial was sufficient to support a finding that the claimant (Lee, Inc.) actually supervised or superintended the construction and that the plans, drawings and designs were incidental to such supervision.

In *Prouse v. Stocker,* 74 Pa. Superior Ct. 55 (1920), at p. 58, Mr. Justice LINN, then Judge of the Superior Court, in the course of his opinion, said, "According to the Century Dictionary, to superintend is 'to direct the course and oversee the details (of some work, as the construction of a building)'; 'to manage'; the words 'overlook,' 'control,' and 'supervise' are synonyms; superintendence is doing the foregoing."

The work of construction and alteration was never completed. Construction was stopped on March 31, 1947, when the plant was about 20% completed. According to the undisputed testimony taken in the light most favorable to the claimant, Lee, Inc., maintained no superintendent, overseer or inspector on the job during the course of construction. The testimony further shows that visits were made to Sinking Spring as follows: By Alan Porter Lee, principal engineer, on December 16, 1946, January 7, 8, 16, February 7, 8 and March 13, 1947; by Adams, claimant's associate engineer, on November 14, 21, 1946, and in company with Mr. Lee February 7, 1947. Of these trips or visits to Sinking Spring the three in 1946 were for the purpose of inspecting or checking the *site* for the purpose of preparing plans and designs. No physical construction had then been begun. The trips February 7 and 8 of

Mr. Lee and February 7 of Mr. Adams, as stated in the testimony, were made in order to prepare an appraisal for a loan application to the Reconstruction Finance Corporation in Washington, and appear to have been so charged (i.e., as appraisal services) in the invoices numbered 745 and 747 annexed to the lien.

This left but four occasions, January 7, 8, 16 and March 13, 1947, on which visits were made to the construction in progress, but evidence of actual superintendence or supervision even on these occasions is most meager, and not sufficient to sustain the verdict. While Mr. Lee testified in general language that these visits to Sinking Spring were for "conference" with his client and "supervision of construction," or "checking the plans and the work," or "checking construction," he gave no details of what he actually did or what control, if any, he exercised. Nor was any invoice produced showing hours of time spent for alleged supervision. When he was asked directly, "Q. When you say you were down here supervising construction, just what did you do, what were the acts which you did to supervise? A. What I did was inspect everything that was going on and check it against our drawings as far as the work had gone at the time, and conferred with the contractor, Mr. White, who was here sometimes, about the progress of the work." There is here no claim of essential authority or control. On the other hand, White, the contractor who actually built the tower, (which was the only *new* construction on the job) testified that he had his own superintendent, Mr. Czark, overseeing the work, who was on the job the entire time; that White himself visited the job once a week; that the pouring of tower took three days from January 13th to January 16th; that Lee gave no supervision and was not there at all until January 16th, on which day the pouring of the tower was completed.

It appears, moreover, that supervision of construction on the part of the claimant was not contemplated in the services engaged by Du-Rite according to certain uncontradicted letters, viz., the letter dated December 11 of Lee to Du-Rite which reads, "This will acknowledge receipt of your letter of 10 December, and we confirm our original arrangement that we are to furnish only, complete plans and specifications for the tower and auxiliary equipment for your new plant at Sinking Spring, Pennsylvania," and the Lee letter of December 12 which reads, "In further clarification of your (sic) letter of 11 December, we wish to make it perfectly clear that our arrangement excludes the design of building alterations at the Sinking Spring Plant since you have advised us in yours of 10 December that you have arranged for this work to be done by others." This correspondence and the fact that nowhere either in the lien or in the testimony is there any invoice of hours of time charged for supervision, all indicate no supervision was contemplated by the parties. Whatever visits were made were at the most incidental to the planning and designing and not the planning incidental to the supervision.

We cannot agree with the learned trial judge's thought as expressed in his opinion to the effect that one valid item of a supervisory trip was sufficient to sustain the verdict, an assertion which he based on the quotation from *Dyer v. Wallace,* 264 Pa. 169; 174, 107 A. 754 (1919) which reads, "It [the lien] must contain at least one valid item." That statement there was quoted from *McCristal v. Cochran,* 147 Pa. 225, 23 A. 444 (1892), in which it was said at page 227, "It is not ground to *strike off* a claim, that some of the items are insufficient. If it contains one good item, which is the subject of a lien, it is enough. Upon the trial of the scire facias a verdict may be rendered for

this item, although all the other items should be excluded from the jury." This is, of course, far different from saying one good item will sustain a verdict for the full amount of the lien.

It must be remembered that this is not a case in which a lump sum or one contract price was agreed on for services to be rendered covering both preparing plans and supervising the work. Here the contract pleaded in the claim provides for payment according to a fixed scale for the time devoted to services actually rendered. In view of that contract the most this claimant could recover would be for the time actually devoted to the supervision and not that devoted separately to planning or designing. The testimony is barren of any such time sheet for supervisory services, hence a recovery therefor is not possible in this state of the record. Even though the testimony were sufficient to show one, two or three supervisory trips, this could not, in any event, under the contract pleaded establish the right to recover for the whole lien which as filed covers only services rendered for designing and planning. Nor can there be a recovery to the extent of the value of the supervision actually made in absence of proof of such value. Neither can a mechanic's lien be made the basis of a recovery for unliquidated damages for breach of contract: *Dyer v. Wallace,* supra. In short, we are forced to the conclusion that the evidence is not sufficient to sustain the verdict, first, because the supervision shown was at most incidental to the making of the plans and designs and not vice versa, and, second, because such supervision as may have been given was not shown by proof of the value of services rendered in that connection.

In the view that we have taken of the question discussed it becomes unnecessary to consider the other questions raised. These questions being, (1) Whether

the claimant, being a foreign corporation, was doing such business in this State as required its registration before filing a lien, (2) Whether claimant being a professional engineer not registered in Pennsylvania as such, was precluded from recovering for the services claimed, (3) Whether the lien was filed in time.

The judgment of the court below is reversed and is now entered for the intervening defendant.