## Dagit v. Radnor Convalescent and Nursing Home, Inc.

*John S. J. Brooks* and *Gaffney & Gaffney*, for plaintiffs.

*Reese A. Davis* and *Greenwell, Porter, Smaltz & Royal*, for defendant.

SWENEY, P. J., November 15, 1965.—This case is before the court en banc upon defendant's preliminary objection, raising the single issue that plaintiffs' mechanic's claim must be dismissed because there was no erection or construction upon defendant's property and, therefore, no supervision by plaintiff architects, as required to maintain an architect's mechanic's claim.

On May 7, 1965, plaintiffs filed their claim; on May 21, 1965, an affidavit of service was duly filed; on June 3, 1965, defendant filed preliminary objection.

The case before us tests the pleadings. At this juncture, the facts are not important, since all facts, in the

circumstances, must be resolved in favor of claimants and the sufficiency of the facts alleged must be assessed.

The "Claim" filed reveals that claimants are architects. Article II, sec. 201(4), of the Act of August 24, 1963, P. L. 1175, includes an architect within the definition of "Contractor", when the architect by contract with the owner, in addition to the preparation of the plans, also superintends the erection or construction of an improvement.

Article III, sec. 301, of the Act of 1963 provides that "Every improvement and the estate or title of the owner in the property shall be subject to a lien . . . for the payment of all debts due by the owner to the contractor . . . for labor or materials furnished in the erection or construction . . . of the improvement. . . ."

Improvement is defined in the act as "any building, structure or other improvement of whatsoever kind or character erected or constructed on land . . .", and "erection and construction" are defined to include excavation, when such work is incidental to the erection or construction.

Paragraph 4 of the "Claim" alleges that claimants agreed to perform all the architectural services necessary to the erection of a nursing home, and paragraph 6 sets forth that they completed preliminary plans, working drawings and specifications and supervised certain test borings on the site of the said home, in accordance with the terms of their contract.

The contract attached to and made a part of claimants' claim provides: "He [the architect] will not be required to make exhaustive or continuous on-site inspections to check the quality or quantity of the work and he will not be responsible for the contractor's failure to carry out the construction work in accordance with the Contract Documents". It further provides that: "If more extensive representation at the site is

required, the conditions (of such representation) shall be agreed to . . . and set forth in an exhibit to this agreement". No such exhibit is attached.

Paragraph 7 of the "Claim" provides that the aforesaid services were rendered in and about the erection and construction of a nursing home.

The additional exhibits attached to the claim leave no doubt that the construction and erection of the intended structure was, in fact, never commenced. The project was abandoned at the completion of the drawings and specifications and before all of the competitive bids were received.

Claimants billed for only that portion of the entire fee provided for in the contract which was due at the completion of specifications and general working drawings.

The narrow question here is whether or not test borings constitute erection and construction, thereby improving the property. Excavation for a cellar, preparatory to the erection of a building, is lienable (McCristol v. Cochran, 147 Pa. 225), but only if a building is ultimately erected using such excavation: Alguire v. Keller, 68 Pa. Superior Ct. 279.

By their very nature, test borings are not intended to be ultimately utilized in the erection of the structure. They are not the type of excavations which are incidental to the erection of a building within the meaning of the decisional law. Nor has sec. 305, article III, of the Act of 1963 any application, where, as here, construction has never been started.

The Mechanics' Lien Law contemplates protection to the mechanic who improves a property; it is to prevent unjust enrichment to the property owner at the expense of the mechanic. Where, as here, the value of the property has not increased, there is no right to lien: Harner v. Thomas, 10 Dist. R. 487; Florin v. McIntire, 14 Pa. C. C. 127; Thompson v. Porter, 14 Pa. C. C. 232;

Fisher v. Groff, 3 D. & C. 2d 49; Alguire v. Keller, supra.

Plaintiffs argue that they have alleged supervision of certain test borings, which they denominate "excavations" in order to bring themselves within the definition of "Contractor" as set forth in the act.

The leading case of Alan Porter Lee, Inc. v. Du-Rite Products Company, Inc., 366 Pa. 548, sets forth the test for determining what degree of supervision is necessary to constitute an architect a "Contractor" within the meaning of the act. The court said therein that claimant visited the site on 10 separate occasions. The first three visits were made in connection with preparation of plans. No physical construction had been begun. There were only four of the visits which could have been solely related to supervision of construction. Even though there were four visits that were made for no other purpose than supervision, the court concluded that the architect had no right to a lien, because the supervision rendered was not contemplated in the contract. They pointed out that whatever visits were made were, at the most, incidental to the planning and designing and not the planning incidental to the supervision.

The cases of Price v. Kirk, 90 Pa. 47, and Bank of Pennsylvania v. Gries, 35 Pa. 423, clearly point up the distinction between planning incidental to supervision, and vice versa.

The lien in the case at bar avers that the only supervision performed by claimants was in connection with the drilling of test borings, and the contract specifically provides that the architect was not employed to supervise construction. The only supervision contemplated therein was incidental to preparation and implementation of the plans. We must conclude that, for these reasons, the lien is defective on its face and that the preliminary objections are well founded.

If the facts warrant, both of the defects are amendable as of right: Knoell v. Carey, 291 Pa. 531, 534; Shollenberger v. Rickman (No. 1), 78 D. & C. 459.

### DECREE

And now, November 15, 1965, it is ordered and decreed that the preliminary objections of defendant are sustained; plaintiffs are granted leave to amend their claim within 20 days from the date of this decree, if same can be amended in the light of this opinion; if no amendment is filed, the mechanic's claim herein filed is dismissed. An exception is noted for plaintiffs.