**Sampson-Miller Associated Companies, Inc., Appellant, *v.* Landmark Realty Company.**

*Dale Cleland,* with him *Cleland, Hurtt and Witt,* for appellant.

*Marvin J. Apple,* with him *Edgar J. Cooke,* and *Apple and Bernstein,* for appellee.

OPINION BY SPAULDING, J., March 27, 1973:

Appellant Sampson-Miller Associated Companies filed a mechanics' lien in 1971 for work performed on vacant land in Allegheny County owned by appellee Landmark Realty Company. The work which furnished the basis of this asserted lien consisted of the following: clearing, grubbing, excavating and grading the land; installation of storm sewers, sanitary sewers, paving and curbing; and seeding. No buildings or other permanent structures were built on these parcels of land. The trial court dismissed appellant's complaint and struck the mechanics' lien, holding that "a mechanics' lien cannot attach to land; there must be a building or part of a building or some type of structure upon which a lien may attach. . . ." This appeal requires a determination of whether a proper construction of the Mechanics' Lien Law of 1963,[1] will support a mechanics' lien filed for work on land on which no buildings have been constructed.

Mechanics' liens were non-existent at common law, being purely of statutory origin. As they are in derogation of the common law and since they effectively represent a special remedy in favor of a unique class of

_____
[1] 49 P.S. §§1101 et seq., Act of August 24, 1963, P. L. 1175, art. I.

creditors, our courts have generally reviewed such claims with a strict construction of the statute which created them. *Brann & Stuart Co. v. Con. Sun Ray, Inc.*, 433 Pa. 574, 253 A. 2d 105 (1969) ; *McCarthy v. Reese*, 419 Pa. 489, 215 A. 2d 257 (1965) ; see Act of May 28, 1937, P. L. 1019, art. IV, §58, 46 P.S. §558.[2]

The first mechanics' lien law, enacted in the Commonwealth in 1803, provided, that "Every dwelling house or other building hereafter constructed and erected within the City and County of Philadelphia . . . shall be subject to the payment of the debts contracted for. . . ."[3] By the passage of the Act of 1836,[4] the lien was extended to all counties of the Commonwealth. That Act stated, inter alia, "that every building erected . . . shall be subject to a lien. . . ." Subsequently, numerous amendments to the 1836 Act were adopted, extending the lien to cover various services rendered in conjunction with building construction. These culminated in the passage of the Act of 1901, which repealed the 1836 Act and most of the amendments. That statute provided: "Every structure or other improvement and the curtilage appurtenant thereto, shall be subject to a lien for the payment of all debts due to the contractor or subcontractor, in the erection and construction or removal thereof . . . and all sidewalks, yards, fences, walls or other enclosure belonging to said structure or other improvement, and in the fitting up or equipment of the same, for the purpose for which the improvement is made."[5]

---

[2] It should be noted that some jurisdictions have applied a liberal interpretation of their statutes, *e.g.*, *Mazel v. Bain*, 272 Ala. 640, 133 So. 2d 44 (1961) ; others construe the right to lien narrowly and the procedure for perfecting such liens liberally, *e.g.*, *Friedman v. Stein*, 4 N.J. 34, 71 A. 2d 346 (1950).

[3] Act of April 1, 1803, P. L. 591, 4 Sm. L. V.

[4] Act of June 16, 1836, P. L. 695, §1.

[5] Act of June 4, 1901, P. L. 431, §2, 49 P.S. §21.

Prior to this, however, Article III, §7, of the Pennsylvania Constitution of 1874 had prohibited the General Assembly from passing "any local or special law authorizing the creation, extension, or impairing of liens . . . or providing or changing methods for the collection of debts. . . ." The foregoing legislative attempt to broaden the right to lien was thereafter declared unconstitutional and unenforceable insofar as it extended the right to lien beyond that which existed at the time of the adoption of the 1874 Constitution. *Parkhill v. Hendricks,* 53 Pa. Superior Ct. 9 (1913); *Kinsinger v. Keasbey & Mattison Co.,* 193 Pa. Superior Ct. 383, 165 A. 2d 107 (1960).

The most recent change in this remedy was the 1963 Act which provides the statutory basis for the instant claim. Essentially it recodified the 1901 Act and existing decisional law, without abridging or enlarging the right to lien.[6] In 1967, the existing constitutional limitation on legislative power to affect such liens in Article III, §7, was repealed. Appellee contends that our interpretation of the scope of the lien provisions of the 1963 Act is nevertheless limited by the constitutional prohibition which existed at the time of its enactment, in spite of the subsequent repeal of that prohibition. However, our construction of the plain wording of the 1963 Act renders unnecessary a resolution of this constitutional question.[7]

---

[6] See Comment—Joint State Gov't. Commission, 1964 Report, 49 P.S. §1201(1), (12).

[7] In support of the claim that the 1967 constitutional amendment would not apply retroactively, appellee cites *Lower Macungie Township Annexation Case* (No. 1), 213 Pa. Superior Ct. 313, 248 A. 2d 58 (1968), for the proposition that new constitutional provisions of a restrictive nature apply prospectively only, allowing existing statutes, not expressly or impliedly repealed, to remain in full force and effect. *Perkins v. Slack,* 86 Pa. 270 (1878). The issue here differs in that appellant contends that a constitutional amendment repealing a prior restriction on legislative authority

The 1963 Act[8] provides: "Every improvement and the estate or title of the owner in the property shall be subject to a lien . . . for the payment of all debts due by the owner to the contractor or by the contractor to any of his subcontractors for labor or materials furnished in the erection or construction, or the alteration or repair of the improvement. . . ."

"Improvement" is defined in the Act as "[including] any building, structure or other improvement of whatsoever kind or character erected or constructed on land, together with the fixtures and other personal property used in fitting up and equipping the same for the purpose for which it is intended."[9] This language, without more, would appear to support appellant's argument in support of a valid lien, i.e., that his work created a permanent and valuable improvement on appellee's land, regardless of the construction of any kind of "building" thereupon. "Improvement" has been defined as "a permanent addition to real property that enhances its capital value . . . and is designed to make the property more useful or valuable."[10] Certainly the erection of curbing, paving, and sewers, if not grading,

---

effectively "breathes life" into statutes which were, at least partially, unconstitutional when enacted, due to their scope having conflicted with the repealed constitutional provision. Although there appear to be no Pennsylvania cases on this precise question, the weight of authority in other jurisdictions appears to be against the validation of unconstitutional statutes by subsequent constitutional amendments which merely authorize the enactment of such statutes, absent an express or implied ratification of those statutes. *Village of Mt. Pleasant v. Vansice,* 43 Mich. 361, 5 N.W. 378 (1880), *Fleming v. Hance,* 153 Cal. 162, 94 P. 620 (1908). But see *People ex rel. McClelland v. Roberts,* 148 N.Y. 360, 42 N.E. 1082 (1896), where the court found "no reasonable or just foundation" for requiring the legislature to re-enact a statute in order to give it effect.

[8] See footnote 1, supra, 49 P.S. §1301.

[9] See footnote 1, supra, 49 P.S. §1201(1).

[10] Webster's Third New Int'l. Dictionary (1969).

excavating, clearing and seeding, would fit within this standard without any stretching of the word.[11] Here, however, we are faced with additional statutory material which governs such preliminary work and precludes the interpretation sought by appellant. "Erection and construction" means ". . . the erection and construction of a new improvement or of a substantial addition to an existing improvement. . . ."[12] The definitional sections go on to include within the scope of "erection, construction, alteration or repair", the following: "demolition, removal of improvements, excavation, grading, filling, paving and landscaping, *when such work is incidental to the erection, construction, alteration or repair.*"[13] (Emphasis added.) The aforementioned section was intended to declare "existing decisional law with respect to such work upon the ground . . . which is incidental to the erection, construction, alteration or repair of an improvement, as compared to such work when it is performed independently of any erection, construction, alteration or repair of an improvement, in which latter case no lien is allowed." Comment— Joint State Gov't. Commission, 1964 Report, 49 P.S. §1201(1), (12).

Court interpretations of earlier statutes prior to the 1963 enactment had indeed provided protection for those who did preliminary work similar to that performed by appellant, but only if that work was connected to, and an integral part of, the erection, construction, alteration, or repair of the main improve-

---

[11] Indeed, a growing number of states have seen fit to include within the purview of their mechanics' lien statutes such work which is preliminary to actual building construction. See, *e.g.*, Cal. Civ. Code §§3106, 3110 (Supp. 1973); Hawaii Rev. Statutes, Title 28 §§507-41 (1955); Texas Rev. Civ. Stat. art. 5452 (Supp. 1961); Ill. Rev. Stat. ch. 82 §1 (1972).

[12] See footnote 1, supra, 49 P.S. §1201(10).

[13] See footnote 1, supra, 49 P.S. §1201(12)(a).

ment, the main improvement being a dwelling or other permanent building or structure.[14] See *Alan Porter Lee, Inc. v. Du-Rite Products Co.*, 366 Pa. 548, 79 A. 2d 218 (1951) (architect's lien for drawings and plans under 1901 Act valid only if he actually supervises or superintends construction work); *Yearsley v. Flanigen*, 22 Pa. 489 (1854) (lien for paving valid only when part of a contract for brick and stone work for building construction); *Kinsinger v. Keasbey & Mattison Co.*, supra. "Buildings" as improvements have been extended to include all structures of a substantial and permanent nature. *Short v. Miller*, 120 Pa. 470 (1888); *Short v. Ames & Keese*, 121 Pa. 530, 15 A. 607 (1888) (lien allowed on oil refinery). In no case, however, has a lien been allowed for work on land alone where no building or permanent structure is erected. Constrained as we are by the plain words of the statute and by these expressions of the intention of the legislature, see The Statutory Construction Act, Act of May 28, 1937, P. L. 1019, art. IV, §51, 46 P.S. §551, we must affirm the trial judge's holding that no lien can attach to land for work unconnected to the construction of a building.

We reach this result reluctantly, however, and urge the legislature, now freed of restraints in this area by the 1967 constitutional amendments, to liberalize the wording of the statute to bring within the purview of the lien work similar to that done by appellant. The

---

[14] Sidewalks, alone, have never been regarded as "improvements" subject to lien. The Comment to the definition of "improvement" in the 1963 Act notes that "improvements such as sidewalks, yards, fences, walls" are "deemed included in the generic definition of 'fixtures and other personal property used in fitting up and equipping [the improvement] for the purpose for which it is intended'." This indicates the envisioning of there being a building or structure to be "fitted up"; a sidewalk would not as appellant contends, itself qualify under the Act as an improvement.

present scope of the lien would deny a lien to a mason who constructed the foundation for a building, if the building, for whatever reason, were not constructed. Likewise, as here, one who laid a network of streets on undeveloped land is given no security for this debt, while one who does the identical work on land where a house is being built enjoys the security of the lien. These seem to be anomalous if not inequitable results, particularly in light of the aims of such legislation to encourage construction[15] and afford protection for laborers.

In addition, the conditions prevalent at the time of the inception of the mechanics' lien concept and on which the refusal to extend it to work on land alone were based, no longer exist. The historical opposition to the extension of such liens stems from the common law and later-day reluctance to encumber real property, particularly as land and agriculture were viewed as the source of all prosperity. See, *e.g., Young v. Shriver,* 56 Cal. App. 653, 657, 206 Pac. 99, 101 (D.C. App., 1922). In light of the transformation to a commercial, service-oriented economy, it would appear that the failure to extend the lien to cover improvement of land, regardless of its connection to the construction of buildings, lacks any rational policy basis.

The order of the court below is affirmed.

---

[15] Indeed, the first mechanics' lien statute in America was enacted to facilitate the construction of the city of Washington, D. C. See Cushman, *The Proposed Uniform Mechanics' Lien Law,* 80 U. of Pa. L. Rev. 1083 (1932).