DOLLAR BANK, FSB, Appellee,

v.

EM $^2$ DEVELOPMENT CORPORATION,
Appellee.

Appeal of ALLEGHENY MILLWORK,
PBT, Appellant.

Superior Court of Pennsylvania.

Argued May 20, 1998.

Filed Aug. 18, 1998.

Gary P. Nelson, Pittsburgh, for appellant.

Thomas E. Reilly, Pittsburgh, for Dollar Bank, appellee.

Before DEL SOLE, JOYCE, and MONTEMURO *, JJ.

MONTEMURO, Senior Judge:

Appellant, Allegheny Millwork, appeals from the July 3, 1997 Order entered in the Court of Common Pleas of Washington County dismissing Appellant's challenges to a Sheriff's sale. We affirm.

Toscano Development, a corporation which purchases undeveloped land, installs the infrastructure and then sells lots for residential use, owned thirty lots in a housing development named Sienna Woods. In 1993, Toscano prepared the entire project for construction by installing sewer lines, placing fill, and building an end wall to contain water flow and ensure the stability of the soil. Toscano completed this work in the latter part of 1993. On August 26, 1994, EM $^2$ Development Corporation, a housing contractor, purchased one lot, Lot 115, from Toscano in order to build a house on the site. On the same date, EM $^2$ entered into an agreement with Appellee, Dollar Bank, for financing the real estate purchase and the construction. Dollar Bank recorded this mortgage on September 8, 1994. Sometime after EM $^2$ purchased the property from Toscano, EM $^2$ began work on building the house now located on the property. At some point, EM $^2$ subcontracted unspecified work to Appellant, and, pursuant to this agreement, Appellant supplied finishing materials worth $18,459.01 to the construction site between August and December of 1995.[1] On January 18, 1996, Appellant filed a mechanics lien against EM $^2$ for failure to pay for the materials.

---

* Retired Justice assigned to Superior Court.

1. The record does not contain either the date that EM $^2$ began constructing the house or the

date that Appellant entered into the contract with EM $^2$.

Dollar Bank eventually foreclosed on the property and on September 6, 1996, acquired the land at Sheriff's sale. On September 26, 1996, Appellant, desiring to recover the amount of its lien, filed both a Petition to Set Aside the Sheriff's Sale of Real Estate and Exceptions to the Sheriff's Proposed Distribution of Sale Proceeds. The trial court denied these requests on July 3, 1997, stating that Dollar Bank's "mortgage is superior to [Appellant's] lien as the mortgage given to Dollar Bank by the second owner of the realty occurred before any work contracted with [Appellant] commenced. There is nothing in the record to establish a contractual relationship between [Appellant] and the original owner, Toscano Development." (Order dated 7/3/97). From this Order, Appellant filed a timely appeal.

Appellant raises one issue:

Whether a finishing contractor's mechanic's lien will not attach as of the date when visible work commenced on a property because it did not do work for the owner commencing the work?

(Appellant's Brief at 3).

In essence, we are asked to determine when Appellant's lien attached. If we find that the lien attached when Toscano began excavating the property and installing sewer lines for the building of the house, then Dollar Bank must pay Appellant the amount of the lien. Conversely, if we find that the lien attached after EM[2] purchased and began their work on the property, Dollar Bank owes nothing to Appellant, as Appellant has failed to adequately establish on the record whether or not EM[2] started construction prior to the recordation date of Dollar Bank's mortgage.

We agree with Appellant that neither a contractual relationship between the original owner and Appellant, nor the commencement of Appellant's work before the issuance of Dollar Bank's mortgage, is necessary to support a finding that the lien took effect on the date Toscano began work on the property.

■ Section 1508 of the Mechanics' Lien Law of 1963 addresses lien priority, in pertinent part, as follows:

The lien of a claim filed under this act shall take effect and have priority:

(a) In the case of the erection or construction of an improvement, as of the date of the visible commencement upon the ground of the work of erecting or constructing the improvement[.]

49 P.S. § 1508(a). "The Mechanic's Lien Law is a creature of statute in derogation of the common law and must be given strict construction. Therefore, any questions of interpretation should be resolved in favor of a strict, narrow construction." *Delmont Mechanical Serv. v. Kenver Corp.*, 450 Pa.Super. 666, 677 A.2d 1241, 1244 (1996).

■ We agree with Appellant that the trial court incorrectly relied upon the absence of a contract between Appellant and Toscano and the recording of Dollar Bank's mortgage prior to the commencement of work by Appellant. The statute requires only the "visible commencement upon the ground of the work of erecting or constructing the improvement." 49 P.S. § 1508(a). In *Pennock v. Hoover*, 5 Rawle 291 (Pa.1835), a case decided under an earlier version of the Mechanics' Lien statute possessing requirements similar to those of the present enactment,[2] our Supreme Court stated that mechanics' liens are

[m]ade to commence expressly from the commencement of the building of the houses, without reference or regard to the person or persons under whose direction or ownership of the property they are begun, continuing to be the same, at whose instance the materials from time to time, shall be furnished and the labour performed throughout the subsequent stage of the work, until finished. It is not the commencement of the right of ownership or claim to the property, nor yet the time

**2.** The version of the statute applied in *Pennock* stated that "all, and every dwelling-house and other building &c. [sic], shall be subject to the payment of the debts contracted for, or by reason of any work done, or materials found and provided by any brick-maker, . . . or any other person or persons, employed in furnishing material for, or in the erecting and constructing such house or building, before any other lien, which originated subsequent to the commencement of the said house, or other building." *Id.* at 307–08.

at which such right may be first exercised, in contracting for the materials, and with mechanics, for the purpose of continuing the building, that is to fix and regulate the commencement of the liens, on behalf of those furnishing materials, and performing the work; nor is it the time of furnishing the materials, or the time of commencing or finishing the work, but the time of commencing the building of the house, that gives date to the lien.

*Id.* at 307. Clearly, the identity of the party owning the property when the work of building the improvement commenced and the date that Appellant began work are not dispositive in determining priority.

Dollar Bank cites *Fordham's Appeal*, 78 Pa. 120 (1875), in support of the trial court's conclusion that a contract must exist between the party seeking the lien and the original owner. In *Fordham's Appeal*, the initial owner dug a cellar and laid the foundation of a house, then stopped the work and paid all claims. Six months later, the original owner sold the property to a second owner who financed the transaction with a judgment lien. Using the cellar, the new owner constructed a building. A subcontractor filed a mechanics' lien on the building, and, following a judicial sale, claimed that its lien had priority over the lien securing the second owner's purchase price. Our Supreme Court stated that:

> the persons engaged in the building thus put up, could not carry back the lien for work and materials beyond the recommencement of the building by [the second owners]. There was no identity of parties, estate or contract and no unity in the subject of the lien, to enable the liens to relate back to the first commencement of the cellar.

*Id.* at 122. In reaching this decision, the Supreme Court relied upon a previous version of the Mechanics' Lien Law, which contained language that no longer exists in the present enactment. This law, enacted in 1840, stated that

> [t]he lien created by the ACT entitled an ACT relating to the lien of the mechanics and others upon buildings ... shall not be construed to extend any greater or other

estate in the ground on which any building may be erected, than that of the person in possession at the time of commencing said building **and at whose instance the same is erected.**

*Id.* at 121.

Thus, this earlier version of the act expressly addressed the issue of ownership. The Supreme Court interpreted this language to preclude attachment of lien priority on a date prior to the commencement of work performed by the second owners. *Id.* at 121–22. As no such provision exists in the present statute, the Supreme Court's conclusion in *Fordham's Appeal* is inapplicable to the instant matter.

■ Despite our initial agreement with Appellant, we affirm the order of the trial court because the work done previous to EM²'s ownership of the property was not "the work of erecting or constructing the improvement." 49 P.S. § 1508. The work in the instant case does not qualify as either "erection or construction" or as an improvement in and of itself. The Mechanics' Lien Law includes specific examples of erection and construction, which encompass the work performed by Toscano in the instant case: "[d]emolition, removal of improvements, excavation, grading, filling, paving and landscaping, *when such work is incidental to the erection, construction,* alteration or repair." 49 P.S. § 1201(12)(a)(emphasis added); *see also Sampson–Miller Associated Companies, Inc. v. Landmark Realty Co.,* 224 Pa.Super. 25, 303 A.2d 43, 45–46 (1973) (holding that installation of storm and sanitary sewers, paving and curbing, as well as clearing, grubbing, excavating and grading of land must be incidental to construction of a building in order to qualify as erection and construction).

In the instant case, the work performed by Toscano was not "incidental to the erection [or] construction" as evidenced by the fact that the work was not performed as part of a continuous scheme to construct a home. Rather, Toscano designed a community merely for the purpose of selling the lots. Toscano presumably would sell those lots to whomever provided an adequate purchase

price, including an individual who desired to prevent the construction of an improvement, such as an adjacent lot owner who desired to enhance privacy by maintaining a wooded, uninhabited piece of property on the adjoining parcel. The fact that Toscano was not engaged in building a house is evidenced by a multitude of factors: the nature of Toscano's business; the fact that Toscano paid all of its contractors prior to selling the lot to EM[2]; the change in ownership of Lot 115, the lapse in time between the conclusion of Toscano's work and the beginning of construction by EM[2]; and the fact that Toscano performed its work to benefit the entire development, not specifically Lot 115.

In light of this evidence, it is obvious that the building of the house did not begin until a party, in this case EM[2], purchased a lot from Toscano and began construction. At that point the building of the house was definitively commenced. While Toscano likely anticipated that an improvement would eventually rest on lot 115, the company did not perform work calculated to ensure the completion of a house.

Neither can the work performed by Toscano be considered an improvement in and of itself. The Mechanics' Lien Law defines improvement as "any building, structure or other improvement of whatsoever kind or character erected or constructed on the land, together with the fixtures and other personal property used in fitting up and equipping the same for the purpose for which it is intended." 49 P.S. § 1201(1). This Court has read improvement to mean "a building or permanent structure." *Sampson–Miller Associated Companies, Inc.*, 303 A.2d at 45–46. Clearly, installing sewer lines, placing fill, and building an end wall to contain water flow and ensure the stability of the soil cannot be classified as a building or permanent structure. *See id.* 303 A.2d at 46.

Accordingly, for the foregoing reasons, we affirm the order of the trial court.

Order affirmed.