J-A01012-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| BLOOMING GLEN CONTRACTORS, INC. | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| | : | No. 968 EDA 2023 |
| GREEN FIG LAND, LLC | : | |

Appeal from the Order Entered March 1, 2023
In the Court of Common Pleas of Chester County Civil Division at No(s):
2022-09043-ML

BEFORE:   LAZARUS, P.J., PANELLA, P.J.E., and COLINS, J.[*]

MEMORANDUM BY LAZARUS, P.J.:                    **FILED FEBRUARY 21, 2024**

Blooming Glen Contractors, Inc. (Blooming Glen/Claimant) appeals from the order, entered in the Court of Common Pleas of Chester County, sustaining the preliminary objections filed by Appellee, Green Fig Land, LLC (Green Fig), and striking Blooming Glen's Mechanics' Lien claim.  After careful review, we affirm.

Blooming Glen is a Pennsylvania corporation, headquartered in Skippack, that performs civil construction services, including full-service site contracting for water and wastewater services.  This matter is one of four related Mechanics' Lien claims Blooming Glen filed, in November 2022, relating to its removal and hauling of sludge and liquid for a decommissioning

---

[*] Retired Senior Judge assigned to the Superior Court.

project, **see infra** at 2, located at 800 Swedesford Road (a/k/a 948 Swedesford Road) in Malvern.[1]  In its claim, Blooming Glen alleged that it is a "subcontractor" with respect to property identified as "UPI 42-3-130.2, Parcel ID 4203 01302300 [(Property)]"[2] and that "the fee simple owner of the Property is Respondent Green Fig Land[,] LLC."  Statement of Mechanics' Lien Claim, 11/14/22, at ¶ 2-4.

In October 2021, East Whiteland Township Zoning Hearing Board (Board) granted an application for several variances for the Property, in connection with Green Fig's intended construction of a data center (Data Center) on the Property.  **See** Preliminary Objections filed by Green Fig, 1/19/23, at ¶ 24 (Green Fig also sought "further variance relief with respect to . . . the parcels identified as UPI Nos. 42-3-128, 42-3-130, 42-3-130.1[,] and **42-3-130.2**— for, among other things, an extension of the previously granted use variance for a data center to allow additional building square footage[.]") (emphasis added).  The Board's grant of the variances was conditioned on Green Fig completing the "Malvern Hunt Decommissioning Project" (Project) at 800 Swedesford Road in East Whiteland.  Statement of Mechanics' Lien Claim, 11/14/22, at ¶ 8.  The Project consisted of diverting

---

[1] **See** Blooming Glen Formal Notice of Intent to File Mechanics' Lien Claim Letter, 9/8/22, at ¶ 5 (noting that property claimed to be subject to lien "is 800 Swedesford Road (a/k/a 948 Swedesford Road))."

[2] Blooming Glen avers in its Statement of Mechanics' Lien Claim that there is "no known street address" for the Property.  Statement of Mechanics' Lien Claim, 11/14/22, at ¶ 3.

"existing domestic sewage from [East Whiteland Township's] Malvern Hunt Wastewater Treatment Plant to the existing public sewer along Chester Valley Trail for treatment at Valley Forge Sewer Authority's [Wastewater Treatment Plant]." Preliminary Objections filed by Green Fig, 1/19/23, at ¶ 29 (citing Malvern Hunt Closure Plan, Exhibit L, at 1).

Blooming Glen entered into an agreement with Environmental Engineering & Management Associates, Inc. (EEMA) to serve as the general contractor on the Project. *See* Statement of Mechanics' Lien Claim, 11/14/22, at ¶ 11. As part of its contract with EEMA, Blooming Glen agreed to "furnish[] the labor, materials, equipment, and supervision necessary for the removal and hauling of sludge and liquid [] contained in two wastewater lagoons located on the Project." *Id.* at ¶ 13. When EEMA failed to pay Blooming Glen for the labor, materials, and equipment it provided on the Project as per their agreement, Blooming Glen filed the lien claim against Green Fig as "the fee simple interest . . . Owner [of] the Property [and] any and all buildings erected thereupon, and the curtilage appurtenant thereto." *Id.* at ¶ 21. In its claim, Blooming Glen sought the "balance due and owing [] for [the] work [it] performed on the Project," *id.* at ¶ 23, including "the full amount of the labor, materials, and equipment it provided on the Project," which totaled $776,265.52. *Id.* at ¶¶ 14, 23.

Blooming Glen claimed that, "as a direct result of [its] work on the Project[, Green Fig] received a variance on the Property in order to construct the Data Center[.]" *Id.* at ¶ 18. Thus, Blooming Glen claimed that its work

"was incidental to and necessary for the construction of [Green Fig's] Data Center [and] was part of the improvements performed for the construction of the Data Center." *Id.* at ¶¶ 15-16.

On January 19, 2023, Green Fig filed preliminary objections to Blooming Glen's Mechanics' Lien claim alleging: (1) Blooming Glen provided no materials to the Property; (2) Blooming Glen's work at the Property was not performed as an integral part of a construction plan; (3) Blooming Glen's work was furnished for a purely public purpose; and (4) the lien claim fails to include "a detailed statement of the kind and character of the labor or materials furnished" for which it claims it is owed payment, in contravention of 49 P.S. § 1503(6). On March 2, 2023, the trial court entered an order granting Green Fig's preliminary objections and striking the Mechanics' Lien Claim.

Blooming Glen filed a timely notice of appeal and court-ordered Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. Blooming Glen presents the following issue for our consideration: "Whether the trial court erred in sustaining [p]reliminary [o]bjections and dismissing [Blooming Glen's] Mechanics' Lien [c]laim with prejudice." Appellant's Brief, at 5. In the argument section of its brief, Blooming Glen narrows the scope of its broad issue on appeal to the following, "[T]he trial court should have determined that because Blooming Glen's work was incidental to the construction of the Data Center (as specifically permitted by the Lien Law), Blooming Glen could maintain a mechanics' lien on the Data Center property[.]" Appellant's Brief, at 12.

- 4 -

Mechanics' Lien laws "are designed to protect persons who, before being paid (or fully paid), provide labor or material to improve a piece of property." ***Bricklayers of W. Pa. Combined Funds, Inc. v. Scott Dev. Co.***, 90 A.3d 682, 690 (Pa. 2014) (citation omitted). Pennsylvania's "Mechanics' Lien Law [(Law)]. . . is a creation in derogation of the common law, and, therefore, any question of interpretation shall be resolved in favor of strict, narrow construction." ***Wentzel-Applewood Joint Venture v. 801 Market Street Associates, L.P.***, 878 A.2d 889, 892 (Pa. Super. 2005) (citation omitted). "A mechanics['] lien is an extraordinary remedy, which should only be afforded to [claimants] who judiciously adhere to the requirements of the [Law.]" ***Philadelphia Constr. Services, LCC. v. Domb LLC***, 903 A.2d 1262, 1267 (Pa. Super. 2006).

Our standard of review for an order dismissing a mechanics' lien claim based upon preliminary objections is as follows:

> Our standard of review of an order of the trial court overruling or [sustaining] preliminary objections is to determine whether the trial court committed an error of law. When considering the appropriateness of a ruling on preliminary objections, the appellate court must apply the same standard as the trial court.
>
> Preliminary objections in the nature of a demurrer test the legal sufficiency of the complaint[.] Preliminary objections which seek the dismissal of a cause of action should be sustained only in cases in which it is clear and free from doubt that the pleader will be unable to prove facts legally sufficient to establish the right to relief. If any doubt exists as to whether a demurrer should be sustained, it should be resolved in favor of overruling the preliminary objections.

- 5 -

***R.A. Greig Equip. Co. v. Mark Erie Hosp., LLC***, 305 A.3d 56, 59 (Pa. Super. 2023) (citation omitted).

> Section 1301 of the Law provides:
>
> **(a)** General Rule.  Except as provided under subsection (b), every improvement and the estate or title **of the owner in the property** shall be subject to a lien, to be perfected as herein provided, for the payment of all debts due by the owner to the contractor or by the contractor to any of his subcontractors for labor or materials furnished in the erection or construction, or the alteration or repair of the improvement, provided that the amount of the claim, other than amounts determined by apportionment under section 306(b) of this act, shall exceed five hundred dollars ($[]500).

49 P.S. § 1301(a) (emphasis added).  ***See Matternas v. Stehman***, 642 A.2d 1120, 1124 (Pa. Super. 1994) (Mechanics' Lien law was "intended to protect the prepayment of labor and materials that a contractor invests in another's property, by allowing the contractor to obtain a lien interest **in the property involved**.") (emphasis added).

The Law "expressly provides that property is lienable for excavation performed incidental to the erection or construction of an improvement." ***B.N. Excavating Inc. v. PBC Hollow-A.L.P.***, 71 A.3d 274, 279 (Pa. Super. 2013), (citing 49 P.S. §§ 1301, 1201(1), (12)(a)).  "Improvement has been defined as 'a permanent addition to real property that enhances its capital value . . . and is designed to make the property more useful or valuable.'" ***Sampson-Miller Assoc. Cos. v. Landmark Realty Co.***, 303 A.2d 43, 45 (Pa. Super.

1973), abrogated and overruled in part by **B.N. Excavating**, **supra**.[3]   In **Sampson-Miller Assoc.**, **supra**, our Court observed that the General Assembly intended to "differentiate between situations where groundwork is performed **incidental to** construction as opposed to when groundwork is performed **independent of** construction."  **Id.** at 45 (emphasis added).  **See also** 49 P.S. § 1201(2) (defining "**property**" as "the improvement, the land covered thereby . . . **belonging to the same legal or equitable owner** reasonably needed for the general purposes thereof") (emphasis added).

Preliminary objections to a claim under the Law are limited to a showing of "exemption or immunity of the property from lien, or for lack of conformity with [the Mechanics' Lien Law]."  49 P.S. § 1505.  Here, the trial court made the following findings when it dismissed Blooming Glen's claim:  (1) the work at issue was not performed on Green Fig's property; (2) Blooming Glen's work was not an integral part of a construction plan, **see** 49 P.S. § 1301(a); (3) Blooming Glen's work was furnished for a purely public purpose, **id.** at § 1303(b); and (4) the Mechanics' Lien claim violates 49 P.S. § 1503.  **See** Trial Court Opinion, 6/1/23, at 1.

Instantly, the record reveals that Blooming Glen was hired by EEMA to remove and haul sludge and liquid contained in two wastewater lagoons

---

[3] **B.N.** abrogated and overruled **Sampson-Miller** to the extent that it held there is no bright-line rule that a mechanics' lien can never attach to land absent the presence of an erected structure.  **Id.** at 280.

located at 800 Swedesford Road (a/k/a 948 Swedesford Road).[4] *See* Blooming Glen Formal Notice of Intent to File Mechanics' Lien Claim Letter, 9/8/22, at ¶¶ 1-3, 5. While that project may have served a purpose for the eventual construction of the Data Center, Green Fig is not the owner of the land on which Blooming Glen performed its services and which forms the basis for its mechanics' lien claim. *See* 49 P.S. § 1201(2) (defining "property"); *see also* Letter from Blooming Glen Contractors to EEMA, 9/23.21, at 1 (setting forth Blooming Glen's "detailed scope of work" for the "Malvern Hunt Decommissioning Project [at] 948 Swedesford Road, Malvern, Pa[.] 19355.").

Moreover, the fact that Green Fig may have received a variance as a result of Blooming Glen performing services on property owned by a third party does not make Green Fig subject to a mechanics' lien on that property. *Matternas*, *supra*. Here, Blooming Glen's agreement with EEMA to remove and haul sludge and liquid in two wastewater lagoons for a separate decommissioning project was performed independent of any construction plan for the Data Center. As such, the services performed by Blooming Glen on the Property were not incidental to the construction of the Data Center. *Sampson-Miller Assoc.*, *supra*; *B.N. Excavating*, *supra*. Accordingly, after considering all of Blooming Glen's well-pled material, factual averments

_____

[4] In addition to removing the storage and treatment lagoons on the township's property, the project also included installing landscaping pursuant to a plan approved by the township. *See* Preliminary Objections filed by Green Fig, 1/19/23, at ¶ 20.

and all reasonable inference therefrom, we conclude that the trial court properly granted Green Fig's preliminary objections and struck the Mechanics' Lien Claim. ***R.A. Greig***, ***supra***.

Order affirmed.

Judgment Entered.

*[signature: Benjamin D. Kohler]*

Benjamin D. Kohler, Esq.
Prothonotary

Date: 2/21/2024