# Fluke et al. *v.* Lang et al., Appellants.

*Mechanics' liens—Extension of lien system—Constitutional law —Constitution, article III, section 7—Act of June 4, 1901, P. L. 431—Statutes—Construction.*

1. Under article III, section 7, of the state Constitution, the mechanics' lien system cannot be extended beyond the point it had reached at the time of the adoption of the Constitution.

2. A statute must be so interpreted as will, if possible, make it constitutional.

*Mechanic's lien—Contract by tenant—Improvement for tenant's business—Failure by owner to repudiate—Act of June 4, 1901, P. L. 431—Constitutional law.*

3. Under section 4 of the Mechanic's Lien Act of June 4, 1901, P. L. 431, the fact that an owner knows of and fails to repudiate a contract made by his tenant, for the work to be done in fitting up the property for the tenant's business, will not alone sustain a mechanic's lien to recover, from the property, the cost of the improvement.

4. So long as he acts in good faith, an owner may even consent to the tenant's making an improvement of the leased property, without subjecting it to liability for the cost; but it may be held liable if the owner knows of the tenant's intention to contract, acting as if owner, and does not object, or if he does not repudiate the tenant's act, and give notice of his repudiation, within ten days after he learns such a contract has been made, or of work being done upon his property under circumstances calculated to put him upon notice that the contractor is doing it, because the latter believes the tenant had authority to make a contract which would bind the property.

*Appeals—Inferences from evidence—Binding instructions—Evidence.*

5. In determining whether or not binding instructions should have been given by the court below, all the evidence and inferences therefrom, favorable to the party against whom it is claimed those

instructions should have been given, must be taken as true, and all unfavorable to him, if depending solely upon testimony, must be rejected.

Argued February 9, 1925. Appeal, No. 105, Jan. T., 1925, by I. Lang, from judgment of C. P. Blair Co., March T., 1924, No. 444, original No. 77, March T., 1923, on verdict for plaintiff, in case of R. E. Fluke and H. W. Fluke, trading as J. B. Fluke & Sons, v. I. Lang and J. Saltzman, owners or reputed owners. Before Mosch-zisker, C. J., Frazer, Walling, Simpson, Kephart, Sadler and Schaffer, JJ. Reversed.

Scire facias sur mechanic's lien. Before Bald-rige, P. J.

The opinion of the Supreme Court states the facts.

Verdict and judgment for plaintiff for $2,882 against both defendants. I. Lang appealed.

*Error assigned* was, inter alia, refusal of judgment for I. Lang n. o. v.

*R. A. Henderson,* with him *Isaiah Scheeline,* for appellant.

*R. J. Puderbaugh,* for appellees, cited: Glauser v. Schofield, 38 Pa. Superior Ct. 632.

Opinion by Mr. Justice Simpson, March 16, 1925:

Appellees made a contract with the tenant in possession of a store, forming part of one of appellant's properties, to construct a new front and to fit up the leased portion for the purpose of a business which it is claimed the tenant proposed to carry on at that place. Not being paid for their work, plaintiffs filed a mechanic's lien against the entire property, naming the owner and tenant as defendants; a scire facias was issued and plaintiffs recovered a verdict and judgment thereon; from the latter, the present appeal was taken.

The right to maintain the lien arises, if at all, because of section 4 of the Mechanic's Lien Act of June 4, 1901, P. L. 431, 433, as follows: "Any owner, not being a committee, guardian or trustee, as aforesaid, who shall knowingly suffer or permit any person, acting as if he were the owner, to make a contract for which a claim could be filed, without objecting thereto at the time, shall be treated as ratifying the act of such person acting as if he were the owner, and the claim may be filed against the real owner, with the same effect as if he himself had made the contract. Ratification shall also be presumed, and a like subjection to lien shall follow, if the owner, not being a committee, guardian or trustee, as aforesaid, subsequently learning of such contract or of work being done upon his property, shall not, within ten days thereafter, repudiate the same, either by notice to the contractor and subcontractors or by posting such repudiation on the most public part of the structure or other improvement."

It will be observed that the first part of this section places liability upon a property, the owner of which has not contracted for the improvement, only in case he "shall knowingly suffer or permit any person, acting as if he were the owner," to make the contract. Liability is not predicated merely upon the fact that the owner knows a contract is to be made for work to be done on his property; he must also know that the person who intends to make it is "acting as if he were the owner." The last part of the section requires the same construction. Ratification is to be presumed only in case the "owner......subsequently learning of such contract or of work being done upon his property," does not repudiate liability and give the notice specified. The "such contract," there referred to, necessarily means a contract made by some one "acting as if he were the owner." While the words "or of work being done upon his property," would, if standing alone, require a broader construction, they should, in this connection, be given a

meaning which accords with the preceding part of the section.  To hold that an owner, who wishes to escape liability, must always repudiate the act of a tenant, within ten days after he learns that "work [is] being done on his property," would result in this clause conflicting with section 2 of the act, which says: "Nor shall any claim be valid against the estate of an owner, by reason of any consent given by him to his tenant to improve the leased property, unless it shall appear in writing, signed by such owner, that said improvement was in fact made for his immediate use and benefit." Construing the two sections together, however, it is clear that while an owner may consent to his tenant's improvement of the property, without assuming any liability for the work done, provided he acts in good faith throughout, he cannot escape such liability if he knows of the tenant's intention to make a contract "acting as if he were the owner," or if he does not repudiate the tenant's act, within ten days after he learns such a contract has been so made,—whether or not the work has been begun,—or if he ascertains that the work is being done under circumstances which put him upon notice that the contractor is doing it because he believes the tenant had authority to make an agreement which would bind the property.

The same conclusion is reached from another standpoint.  After the passage of the Act of April 28, 1840, P. L. 467 (section 24, page 474), and prior to that of 1901, the property of an owner, who did not contract for work actually done on it, was held liable in two contingencies only:  (1) where the jury was justified in finding that the contractor was an agent of the owner, or the latter was estopped from denying the agency (Einstein v. Jamison, 95 Pa. 403; Bodey v. Thackara, 143 Pa. 171; Bevan v. Thackara, 143 Pa. 182; Jobe v. Hunter, 165 Pa. 5; Balph v. Liberty National Bank, 179 Pa. 430) ; or (2) where the jury found as a fact that, by the arrangement made, the owner was trying to defraud

the contractors and materialmen: Ballman v. Heron, 160 Pa. 377; Ballman v. Heron, 169 Pa. 510; Bohem v. Seel, 185 Pa. 382. The Act of 1901, if it attempts to go beyond this, is pro tanto unconstitutional, because of the provisions of article III, section 7, of the present state Constitution, which forbids any special law "authorizing the......extension......of liens," or "providing or changing methods for the collection of debts": Vulcanite Portland Cement Co. v. Allison, 220 Pa. 382; Dyer v. Wallace, 264 Pa. 169. Hence, as we are required to give the statute such an interpretation as will, if possible, make it constitutional (Com. ex rel. v. Snyder, 279 Pa. 234), we must limit, in the way herein specified, the apparently broad language of the clause under consideration.

Throughout the trial, which was carefully conducted, the court below lost sight of this necessary limitation. We need only refer, by way of illustration, to defendant's seventh point for charge (embodied in the fourth assignment of error), as follows: "That although the said I. Lang had personal knowledge that the said Jacob Saltzman, as tenant of the premises demised, was having the said repairs made by the plaintiffs, yet the said I. Lang was under no obligation to the plaintiffs to notify the said plaintiffs that he, the said I. Lang, would not be liable to the plaintiffs for the costs of said repairs." That point was refused without anything further being said on the subject. We could sustain this ruling, if elsewhere in the charge it appeared the jury had been told that appellant's knowledge of the work being done, and his failure to so notify appellees, were not, of themselves alone, sufficient to make the property liable, since the controlling fact was that defendant must have known the lessee acted as if he were owner, or else the property could not be charged with the debt. Nowhere is this stated, however, and from the charge itself, and the opinion of the trial judge on the motion for a new trial, it is clear he did not thus consider the case. Be-

cause of his refusal to so charge, the jury may well have thought it was their duty to render a verdict for plaintiffs; for, admittedly, appellant had personal knowledge the work was being done under a contract with the tenant and did not notify plaintiffs that the tenant had no authority to bind the property.

What has been said necessitates a reversal of the judgment, and the only other question we need decide is, Should we award a new venire? Because of the cases cited above, we think the matter is one for a jury's consideration, under careful instructions as to the circumstances by virtue of which, if at all, plaintiffs are entitled to recover. In determining whether or not a case should be submitted to a jury, "all the evidence and inferences therefrom favorable to plaintiff must be taken as true, and all unfavorable to him, if depending solely upon testimony, must be rejected": Fuller v. Stewart Coal Co., 268 Pa. 328; Sheer v. Melville, 279 Pa. 401. Thus viewed, the evidence here may be summarized as follows, the cold type necessarily giving, however, only an inadequate idea of the effect it may justly have had upon the jury:

Before the date of appellant's alleged lease to Saltzman, the latter entered into negotiations for the improvement; one of plaintiffs' employees visited the property, and was instructed by appellant to use, in doing the work, certain lumber left by a former tenant, and hence belonging to appellant himself; who, in other respects also, directed how and where the work was to be done. The lease called for rent to be paid in advance, but none was ever paid. It also required Saltzman to keep the property in repair, but was silent as to betterments. In his affidavit of defense, appellant averred "that under and by virtue of the said agreement of lease and with my consent the said J. Saltzman had a legal right to make the improvements and to contract for the furnishing of the material and labor for which he did contract with the claimants." The lease was undated, and was not

shown to the contractors until after the trouble arose, at a time subsequent to their first visit to appellant. While the work was being performed, appellant was constantly present, did not object to what was being done, and at times gave instructions regarding the work and the materials to be used. Saltzman had neither money nor credit, a fact known to appellant, but not to appellees; the former advising other parties not to trust Saltzman, and telling them of his financial condition. In the cases of those others, appellant would not himself be benefited if credit was given to Saltzman. Appellant says he suspected from the beginning that Saltzman would not pay his bills, yet the lease was made for five years, and, until after the work was completed, appellant did not advise plaintiffs of the insolvency, as he had the others, because, as was testified, he said "he wanted to profit by our [plaintiffs'] loss." About the time the work was completed, and before the store was really opened for business, appellant distrained upon, and later bought in, the materials furnished by plaintiffs in making the improvement. In an endeavor to at least partially protect themselves, plaintiffs offered to take over Saltzman's lease, and to pay defendant the rent in arrears, as well as that to accrue during the balance of the term, but he refused to consider the proposition. Plaintiffs' work and materials largely increased the rental value of the property. By the lease to Saltzman, he was to pay $400 per month; the new lessee pays $550 per month, the term of the lease being five years; appellant is thus profiting, and will continue to profit by their loss, as he said he intended should result from his failure to notify them of Saltzman's financial condition.

Considered separately, several of these facts seem wholly innocuous, and in some of the things appellant said and did, he was apparently well within his rights; but, depending largely on the manner of the witnesses on the one side or the other, and remembering that concealment is always the aim of those who desire to take

advantage of others, the facts stated, when taken together, may or may not carry conviction of appellant's alleged bad faith, or of his actual or intentional deception of appellees. Under such circumstances, the case is peculiarly one for a jury.

The judgment of the court below is reversed and a venire facias de novo is awarded.