90 A.3d 682

BRICKLAYERS OF WESTERN PENNSYLVANIA
COMBINED FUNDS, INC., Appellee

v.

SCOTT'S DEVELOPMENT COMPANY, Appellant.

Laborers' Combined Funds of Western Pennsylvania, as Agent for Phillip Ameris and Albert W. Betler, Trustees Ad Litem, Laborers' District Council of Western Pennsylvania Welfare and Pension Funds, the Construction Industry Advancement Program of Western PA Fund, and the Laborers' District Council of Pennsylvania and its Affiliated Local Unions, Appellees

v.

Scott's Development Company, Appellant.

Supreme Court of Pennsylvania.

Argued April 10, 2013.

Decided April 17, 2014.

28

Bryan Geoffrey Baumann, Esq., Knox, McLaughlin, Gornall & Sennett, P.C., Erie, for Scott's Development Company.

Edward Bernandon Gentilcore, Esq., Pittsburgh, for Associated General Contractors of America, Amicus Curiae, General Building Contractors Association, Amicus Curiae, General Contractors Association of Pennsylvania, Amicus Curiae, Keystone Contractors Association, Amicus Curiae, The Master Builders' Association of Western Pennsylvania, Inc., Amicus Curiae.

Kenneth Weller Lee, Esq., Lemoyne, for Bricklayers of Western Pennsylvania Combined Funds, Inc. (No. 36 WAP 2012), Laborers Combined Funds of Western Pennsylvania, Phillip Ameris, Laborer's District Counsel of Western pennsylvania, the Construction Industry of Advancement program, Albert W. Betler, Laborers District Council of Pennsylvania and Its Afflicted Unions (No. 37 WAP 2012).

BEFORE: CASTILLE, C.J., SAYLOR, EAKIN, BAER, TODD, MCCAFFERY, ORIE MELVIN, JJ.

### OPINION

Justice SAYLOR.

Appeal was allowed to determine whether the Mechanics' Lien Law of 1963 authorizes a union's employee benefits trust fund to file a mechanics' lien claim on behalf of union members who performed work for a construction contractor.

According to the allegations in the complaints filed by the trust funds (appellees herein),[1] William Pustelak, Inc., a

1. Because this appeal arises out of the sustaining of demurrers, the background is drawn from the complaints and developed in the light

construction contractor ("Contractor"), entered into collective bargaining agreements ("CBAs") with two unions, Bricklayers and Trowel Trades International, Local No. 9, and Laborers District Council of Western Pennsylvania (the "Unions"). The CBAs specified, *inter alia*, that, when Contractor needed bricklayers and/or laborers, Contractor would obtain them from the Unions. The CBAs also referred to Contractor as "Employer," and to any union members hired by Contractor in accordance with the CBAs as Contractor's "employees." The CBAs additionally required Contractor to furnish contributions for employee benefits, such as health and retirement benefits, for each hour of labor performed by union workers. Under the CBAs, the contribution amounts were to be reflected in monthly reports issued by Contractor, and the contributions were to be paid directly to Appellees, who are trustees of Bricklayers of Western Pennsylvania Combined Funds, Inc., and Laborers' Combined Funds, Inc. (the "Trustees"), and who acted as agents to collect such monies on behalf of the union workers. These arrangements were set forth in trust agreements that were incorporated by reference into the CBAs.

While the CBAs were in effect, appellant Scott's Development Company ("Developer") hired Contractor to complete a construction project on land owned by Developer, situated in Erie County and located within the Unions' territory. Because the project required bricklayers and laborers, Contractor, in turn, hired such craftsmen who, notably, were members of the Unions. These workers performed the necessary tasks in a satisfactory manner, and Contractor filed monthly reports as required. Contractor, however, failed to supply the benefit contributions to the trust funds.

The Trustees each filed a Statement of Mechanics' Lien Claim against Developer in the common pleas court pursuant to the Mechanics' Lien Law of 1963.[2] The Trustees then filed

most favorable to the plaintiffs. *See Gresik v. PA Partners, L.P.*, 613 Pa. 303, 304 n. 1, 33 A.3d 594, 595 n. 1 (2011).

2.  Act of August 24, 1963, P.L. 1175, No. 497 (as amended, 49 P.S. §§ 1101–1902) (the "1963 Act").

Complaints to Enforce Mechanics' Lien Claim, seeking recovery of unpaid employee benefit contributions totaling approximately $42,000, together with interest, penalties, fees, and costs. Developer raised a preliminary objection in the nature of a demurrer as to each complaint, alleging that the Trustees lacked standing to assert a mechanics' lien claim on behalf of the unionized workers because such workers were employees of Contractor and, as such, were neither "contractors" nor "subcontractors." [3] Developer noted, in this regard, that the CBAs predated the project in question and referred to Contractor as "Employer" and to the union workers as "employees." Developer additionally asserted that the complaints sought to force it to fund Contractor's obligations to the Trustees. Developer argued that the Trustees' proper means of redress should be via a breach-of-contract action against Contractor. The Trustees filed answers to the preliminary objections.

The common pleas court disposed of the demurrers in two substantively identical speaking orders. In its orders, the court essentially agreed with Developer's position, concluding that the union members who provided labor for the construction project were employees of Contractor and not employees of the unions or of the Trustees. In this respect, the court did not view the CBAs as subcontractor agreements, but rather, as agreements made on behalf of Contractor's employees defining working conditions, compensation, and other terms. Consequently, the court held that the unionized workers did not come within the meaning of "subcontractor" as that term is defined by the 1963 Act.[4] *See Bricklayers of W. Pa. Com-*

**3.** Under the 1963 Act, "[n]o lien shall be allowed in favor of any person other than a contractor or subcontractor, as defined herein, even though such person furnishes labor or materials to an improvement." 49 P.S. § 1303(a).

**4.** The act defines subcontractor as:

one who, by contract with the contractor, or pursuant to a contract with a subcontractor in direct privity of a contract with a contractor, express or implied, erects, constructs, alters or repairs an improvement or any part thereof; or furnishes labor, skill or superintendence thereto; or supplies or hauls materials, fixtures, machinery or equipment reasonably necessary for and actually used therein; or any or

*bined Funds v. Scott's Dev. Co.*, Civil No. 12533–2009, *Order* at 2 (C.P.Erie, Mar. 25, 2010), *reproduced* in R.R. 241 a; *Laborers Combined Funds of W. Pa. v. Scott's Dev. Co.*, Civil No. 12514–2009, *Order* at 2 (C.P.Erie, Mar. 25, 2010), *reproduced* in R.R. 243a. The Trustees appealed to the Superior Court and filed Rule 1925(b) statements in compliance with the common pleas court's directive. *See* Pa.R.A.P. 1925(b). However, the court did not issue a Rule 1925(a) opinion, presumably relying on the reasoning reflected in its March 25th orders.

The Superior Court consolidated the Funds' appeals and reversed. *See Bricklayers of W. Pa. Combined Funds, Inc. v. Scott's Dev. Co.*, 41 A.3d 16 (Pa.Super.2012) (*en banc*). The majority determined that the term "subcontractor" should be given a broad interpretation, as the 1963 Act is remedial in nature and, as such, should be liberally construed to further its purposes. *See generally Matternas v. Stehman*, 434 Pa.Super. 255, 264, 642 A.2d 1120, 1124 (1994) ("The Mechanics' Lien Law of 1963 was intended to protect … prepayment labor and materials that a contractor invests in another's property, by allowing the contractor to obtain a lien interest in the property involved."). While recognizing that the intermediate court's previous decisions indicated that the enactment is subject to strict construction as a statute in derogation of the common law, *see Bricklayers*, 41 A.3d at 24 (collecting cases), the majority stated that such decisions improperly relied on case law from this Court interpreting the 1963 Act's predecessor statute, the Mechanics' Lien Law of 1901. The court pointed out that, under the Statutory Construction Act, the rule of strict construction for statutes in derogation of the common law is inapplicable to statutes enacted finally after

> all of the foregoing, whether as superintendent, builder or materialman. The term does not include an architect or engineer who contracts with a contractor or subcontractor, or a person who contracts with a materialman or a person who contracts with a subcontractor not in direct privity of a contract with a contractor.
>
> 49 P.S. § 1201(5). *See generally id.*, Comment—Joint State Gov't Comm'n 1964 Report ("Prior decisional law that laborers are not subcontractors, even though employed by a contractor, remains unchanged.").

September 1, 1937, *see* 1 Pa.C.S. § 1928(a), and that, with certain limited exceptions not presently applicable, all other provisions of a statute should be liberally construed to "effect their objects and promote justice." *Id.* § 1928(c). Accordingly, the majority suggested that, notwithstanding its prior case law, a liberal construction should pertain relative to the 1963 Act.

Applying such construction, the intermediate court agreed with Developer and the common pleas court that the CBAs do not constitute subcontracts between Contractor and the Unions, primarily because they do not relate to a specific, identifiable "improvement" for purposes of the relevant statutory definitions. *See* 49 P.S. § 1201(1), (5) (respectively defining "improvement" and "subcontractor"). Instead, the court reasoned, the CBAs merely establish Contractor's obligation to employ union members for specific types of work, and govern the terms of employment whenever Contractor would hire such persons to work on a project. *See Bricklayers,* 41 A.3d at 29.

Still, although the Funds did not raise an implied-contract theory in their complaints, their Rule 1925(b) statements, or their brief, the Superior Court determined, *sua sponte,* that implied-in-fact contracts between Contractor and the Unions—for the specific construction project in question—could be discerned from the averments set forth in the complaints. *See* 49 P.S. § 1201(5) (defining the term subcontractor to include one who has a contract with a contractor that is "express or implied"). In particular, the majority reasoned that, pursuant to the CBAs, the Unions furnished its members to Contractor to perform the necessary work on the improvement, and those individuals undertook such work with an expectation that Contractor would fulfill its obligations under the CBAs' employee-benefit provisions. *See Bricklayers,* 41 A.3d at 30. Therefore, according to the majority, the complaints' allegations, if accepted as true, established that the Unions were subcontractors for purposes of the 1963 Act. Referencing case law from other jurisdictions, the majority then held that the Trustees, standing in the shoes of the union

members for purposes of collecting the employee-benefit monies, had legal standing to assert the mechanics' liens. *See id.* at 30–32 (discussing cases from other jurisdictions).[5]

Judge Olson dissented, initially faulting the majority for relying on an implied-contract theory which was not argued by the Trustees. *See Bricklayers*, 41 A.3d at 36–37 (Olson, J., dissenting) (citing *Rabatin v. Allied Glove Corp.*, 24 A.3d 388, 396 (Pa.Super.2011) (indicating that the Superior Court "may not act as counsel for an appellant and develop arguments on his behalf")); *see also In re R.D.*, 44 A.3d 657, 674 (Pa.Super.2012) (same). Although Judge Olson agreed that the act should be liberally construed, she reasoned that, since the Unions did not furnish any labor or materials, even under a liberal interpretation the Unions could not be considered "subcontractors" pursuant to implied-contract theory, as such an interpretation would not effect the act's objects. Finally, Judge Olson differed with the majority's reliance on case law from other jurisdictions to conclude that the Trustees stand in the shoes of the union members. Stating that "Pennsylvania's mechanics' lien statute is relatively unique to our nation," *Bricklayers*, 41 A.3d at 38, Judge Olson concluded:

> The problem . . . is that the majority never explains how the union members—who are defined under the collective bargaining agreements as employees of the contractor—might qualify as subcontractors under the statute. Rather, the majority jumps over this hurdle by citing to foreign law and borrowing the final conclusion from those foreign cases: that—since a trustee of an employment benefit fund "stands in the shoes" of a union member for unpaid benefit contributions—the trustee has standing to assert a mechanics' lien claim in Pennsylvania.

*Id.*

Judge Gantman also dissented, taking the position that the 1963 Act's remedies should not be available where the right to

5. In this respect, the majority arguably conflated the Unions and the unionized workers. Notably, the majority failed to recognize that the Trustees have never claimed to stand in the shoes of the Unions. In view of our conclusion, discussed below, that no implied-in-fact contracts were alleged, this circumstance is not ultimately dispositive.

receive benefit payments arises under a contract between a general contractor and a union, when such a contract is independent from and "collateral" or "tangential" to the construction project. Under such circumstances, Judge Gantman indicated, the majority's "liberal construction" "stretches the statute beyond the legislative intent[.]" *Bricklayers*, 41 A.3d at 41 (Gantman, J., dissenting). While agreeing that the Trustees are legally entitled to collect benefit payments pursuant to the CBAs, the dissent reasoned that they already have the means to do so by commencing a breach-of-contract action against Contractor. Therefore, the dissent argued, interpreting the act to support a mechanics' lien against Developer, under the circumstances, effectively makes Developer a surety for Contractor's independent obligations, thereby "burden[ing] the wrong entity." *Id.*

We allowed limited further review to consider the following issues as framed by Developer: whether the Superior Court erred in concluding that the 1963 Act should be liberally construed; whether even a liberal construction of the act would permit an employee of a contractor to assert a claim as a subcontractor; and whether the Superior Court erred in *sua sponte* finding that implied-in-fact contracts control the parties' rights under the act. *See Bricklayers of W. Pa. Combined Funds, Inc. v. Scott's Dev. Co.*, 619 Pa. 166, 58 A.3d 748 (2012) (*per curiam*).

Developer argues for strict construction of the 1963 Act primarily based on the Superior Court's reasoning in *Sampson–Miller Associated Cos. v. Landmark Realty Co.*, 224 Pa.Super. 25, 303 A.2d 43 (1973). Developer characterizes that case as providing an exhaustive analysis of the relationship between the 1901 and 1963 statutes and concluding that the latter merely recodified the former. On this basis, Developer maintains that the present law should be considered as dating from the 1901 enactment date of its predecessor.[6]

6. *See* 1 Pa.C.S. § 1961 ("Whenever a statute reenacts a former statute, the provisions common to both statutes shall date from their first adoption. Such provisions only of the former statute as are omitted from the reenactment shall be deemed abrogated, and only the new or

Developer also claims that this Court has applied a strict construction to the 1963 Act, *see* Brief for Appellant, at 17–18 (citing *Am. Seating Co. v. City of Phila.*, 434 Pa. 370, 376–77, 256 A.2d 599, 602 (1969)), and discusses a common pleas court decision strictly construing the present statute to conclude that an employee of a contractor or subcontractor may not file a mechanics' lien under the 1963 Act. *See id.* at 18–19 (citing *Liebow v. Eagle Downs Racing Ass'n*, 1 Pa. D. & C.3d 671, 672–73 (C.P. Bucks, June 2, 1976), *aff'd*, 244 Pa.Super. 545, 371 A.2d 518 (1976) (*per curiam*)). Moreover, and in any event, Developer asserts that, as a matter of policy, a result favoring the Trustees would be antithetical to the purposes of the Mechanics' Lien Law, as the Trustees tendered none of the outlays invested in the property.

An *amicus curiae* consisting of several contractor associations adds that the Superior Court erred in two respects. First, it states that the court's application of the tools of statutory construction—including the liberal-construction provision reflected in Section 1928 of the Statutory Construction Act—was ill-advised because the court had already determined that the 1963 Act is "clear and free from ambiguity and must be construed according to its plain and natural meaning." *Bricklayers*, 41 A.3d at 24. Second, *amicus* maintains that the intermediate court should have ended its inquiry once it concluded that the Trustees were not themselves contractors or subcontractors under the statute, since they did not perform any work on, or furnish any materials to, the project in question. *See id.* at 19.

changed provisions shall be deemed to be the law from the effective date of the reenactment."); *see also id.* § 1962 ("Whenever a statute is repealed and its provisions are at the same time reenacted in the same or substantially the same terms by the repealing statute, the earlier statute shall be construed as continued in active operation. All rights and liabilities incurred under such earlier statute are preserved and may be enforced."). *See generally City of Erie v. Land Fronting on Se. Corner of Eighth & Peach Sts.*, 339 Pa. 321, 324–25, 14 A.2d 428, 430 (1940) ("Where a statute is repealed and its provisions are at the same time re-enacted by the repealing act, the effect ... is that the earlier statute is not in fact repealed, but its provisions continue in active operation ...." (internal quotation marks omitted)).

The Trustees reply that a liberal construction based on the mandate of Section 1928 of the Statutory Construction Act is appropriate here, as the 1963 Act was passed long after September 1, 1937. *See* 1 Pa.C.S. § 1928(a), (c). In this respect, the Trustees highlight that amendments to the statute in 2006 expanded the definition of subcontractor, *see* Act of June 29, 2006, P.L. 210, No. 52 (broadening "subcontractor" to include persons who furnish labor "pursuant to a contract with a subcontractor in direct privity of a contract with a contractor"), again supporting the view that the present provision should not be understood as a mere reenactment of the 1901 law. The Trustees also claim that this Court has never expressly interpreted the 1963 Act strictly. As for Developer's reference to *American Seating,* the Trustees acknowledge that that case cited with approval to *Murray v. Zemon,* 402 Pa. 354, 167 A.2d 253 (1960), and that *Murray* applied a strict construction of the 1901 act. However, the Trustees note that it was only the dissent in *American Seating* that specifically referenced the strict-construction aspect of *Murray.* Moreover, the Trustees argue that this Court has recognized that the 1963 Act "effected a substantial change in the law," Brief for Appellees, at 15 (citing *McCarthy v. Reese,* 419 Pa. 489, 490 n. 1, 215 A.2d 257, 258 n. 1 (1966)), thus undermining Developer's contention that it should be strictly construed on the grounds that it is a mere reenactment of the 1901 act.

As well, the Trustees acknowledge that—as was highlighted in *Sampson–Miller*—when the 1963 law was passed, the Pennsylvania Constitution contained a provision forbidding any special law "authorizing the . . . extension . . . of liens" or "providing or changing methods for the collection of debts." PA. CONST. art. III, § 7 (1874); *see Fluke v. Lang,* 283 Pa. 54, 58, 128 A. 663, 664 (1925). However, the Trustees stress that this restriction was repealed in the 1968 Constitution and, as such, can no longer be relied on to support strictly construing the 1963 Act, particularly in light of the guidance provided by the Statutory Construction Act and the fact that changes to the definition of "subcontractor" were made even more recently in 2006, as noted above.

Even if the statute is strictly construed, the Trustees contend that the Unions—and, by corollary, the Trustees—meet the statutory definition of "subcontractor" based solely on the CBAs, inasmuch as the agreements constitute express contracts to provide labor for Contractor's construction projects within the Unions' geographic territory. Contrary to the Superior Court's interpretation, the Trustees maintain that the 1963 Act does not facially require that a contract relate to a specific improvement, thus rendering unnecessary the intermediate court's analysis based on implied-in-fact contracts. *See* Brief for Appellees, at 42 (explaining that the definition of "subcontractor" requires only that, "as a result of a contract (such as the CBAs), the subcontractor ... furnishes labor, materials, services or any combination thereof for an improvement that the contractor has agreed to build for a property owner"). The Trustees also point out that the statute does not expressly preclude the possibility that a contractor's agreement with a subcontractor might predate a construction contract with a property owner.[7]

Separately, the Trustees discount any general distinction between "employees" and "subcontractors," stating that, even if the union workers are deemed employees of Contractor, they still meet the statutory definition of "subcontractor" because they furnished labor to an improvement pursuant to a contract with Contractor. *See* 49 P.S. § 1201(5). The Trustees posit that the statute's express exclusion of laborers should be viewed as referring only to "day laborers asserting mechanics' liens without documentation of their work, i.e., a contract." Brief for Appellees at 51.[8]

7. Alternatively, in defense of the implied contract theory, the Trustees maintain that the theory was preserved, as the complaints sufficiently apprised Developer of the claim being asserted and summarized the essential facts necessary to support the claim, and that it need not have identified the specific, supportive legal theory. *See Allegheny Cnty. v. Commonwealth*, 507 Pa. 360, 372, 490 A.2d 402, 408 (1985) ("If the facts as pleaded state a claim for which relief may be granted under any theory of law then there is sufficient doubt to require ... a demurrer to be rejected."). In terms of consideration, the Trustees advance that "[t]he Unions' ability and willingness to meet [Contractor's] needs on the Improvement is the consideration for the contracts implied in fact relating to [Developer's] Improvement." Brief for Appellees, at 40.

■ "As this matter implicates an issue of statutory interpretation, our task is to determine the will of the General Assembly using the language of the statute as our primary guide." *Osprey Portfolio, LLC v. Izett*, 620 Pa. 274, 281, 67 A.3d 749, 754 (2013) (internal quotation marks omitted). *See generally* 1 Pa.C.S. § 1928(a) ("The object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly."). When the words of a statute are clear and precise, reviewing courts may not disregard those words under the pretext of pursuing the "spirit" of the enactment. *See id.* § 1921(b). Where, however, there is a conflict or ambiguity, we may resort to the tools of statutory construction. *See Oliver v. City of Pittsburgh*, 608 Pa. 386, 394, 11 A.3d 960, 965 (2011). In so doing, we keep in mind that such tools are used as an aid in uncovering the intent of the Legislature, which is always the objective in matters of statutory construction. *See Commonwealth v. Baker*, 547 Pa. 214, 221, 690 A.2d 164, 167 (1997).

■ Mechanics' liens were unknown at common law and are entirely a creature of statute. *See Davis v. Farr*, 13 Pa. (1 Harris) 166, 169 (1850). Such liens are designed to protect persons who, before being paid (or fully paid), provide labor or material to improve a piece of property. *See generally Matternas v. Stehman*, 434 Pa.Super. 255, 264, 642 A.2d 1120, 1124 (1994) ("The Mechanics' Lien Law of 1963 was intended to protect the prepayment labor and materials that a contractor invests in another's property[.]"). Mechanics' liens accomplish this goal by giving lienholders security for their payment independent of contractual remedies. *See, e.g., Flynn Build-*

8. The Trustees also argue that, to restrict their authority to file a mechanics' lien claim would violate the federal Employee Retirement Income Security Act (ERISA), and that Section 303(a) of the 1963 Act, 49 P.S. § 1303(a), is preempted by ERISA. Neither issue is before the Court. Moreover, the Trustees' contention that ERISA requires their remedy to be available specifically via a mechanics' lien claim rests on the premise that they are subcontractors. *See* Brief for Appellees, at 28–30. Therefore, this argument cannot supply an independent basis for affirmance.

*ers, L.C. v. Lande*, 814 N.W.2d 542, 545 (Iowa 2012). *See generally Sampson–Miller*, 224 Pa.Super. at 26–27, 303 A.2d at 43 (indicating that mechanics' liens "represent a special remedy in favor of a unique class of creditors").[9]

The primary interpretive matter involved in this case pertains to the scope of the term "subcontractor" as that word is defined in the 1963 Act. The most salient provisions of the act for present purposes are Section 201(5), which defines "subcontractor," *see supra* note 4, and Section 303(a), which states that no lien is allowed in favor of any person other than a contractor or subcontractor, even though such person furnishes labor or materials to an improvement, *see supra* note 3. If these provisions are viewed side-by-side and the text is taken literally without reference historical context, they are at odds with one another. Section 201(5), on its face, states that any

9.  Some jurisdictions have recognized competing policies favoring the protection of property owners, as either provided for by statute, *see Duffield Constr., Inc. v. Baldwin*, 679 N.W.2d 477, 481 (S.D.2004) (quoting a portion of South Dakota's statute protecting landowners from liens arising from unauthorized improvements), or as stemming more generally from the circumstance that liens create an encumbrance on property that deprives the owner of his ability to convey clear title. *See VCS, Inc. v. Utah Cmty. Bank*, 293 P.3d 290, 295 & n. 12 (Utah 2012). Although such an encumbrance serves the primary purpose of the lien, it imposes a burden on the owner in circumstances where, through no fault of his own, the contractor is derelict in fulfilling its own obligations toward its subcontractors. For this reason, it has been argued, in the context of subcontractor liens, that the risk of double payment is unjust to the property owner—and, as noted, Developer raised a contention along these lines in its demurrers. Some commentators have answered that it is appropriate to incentivize property owners to take measures to protect the financial interests of those who increase the value of their property, and that this does not impose an undue hardship. *See, e.g., Mechanics' Lien—Right of Subcontractor to Lien Regardless of Original Contract*, 32 HARV. L. REV. 178, 178 (1918). Pennsylvania's legislation mitigates any such harm, moreover, by subrogating the owner to the rights of, and security held by, the subcontractor, upon the owner's payment of a claim. *See* 49 P.S. § 1604(1).

In all events, the General Assembly has evidently weighed these considerations and chosen to permit liens in favor of subcontractors, subject to statutory limitations. It is our duty, as a reviewing court, to enforce these rights, limitations, and any other policy choices made by the legislative body as they may be gleaned from the text of the statute. *See Program Admin. Servs., Inc. v. Dauphin Cnty. Gen. Auth.*, 593 Pa. 184, 192, 928 A.2d 1013, 1017–18 (2007).

person who furnishes labor to an improvement pursuant to a contract with the contractor qualifies as a subcontractor, *see* 49 P.S. § 1201(5)—and, indeed, the Trustees argue that "any employee of a 'contractor' meets the definition of a 'subcontractor' " because the employee furnishes labor, skill, or superintendence in exchange for agreed-upon compensation, *see* Brief for Appellees, at 47. On the other hand, Section 303(a) plainly contemplates a class of persons who furnish labor to an improvement, but who are not subcontractors and therefore are not entitled to file a mechanics' lien. *See* 49 P.S. § 1303(a). Since the union members who provided labor for the construction project on Developer's land did so pursuant to an employment agreement of some sort—whether oral or written, or only implied in fact—it is not immediately clear whether they are meant to be included as subcontractors by Section 201(5), or excluded by Section 303(a). We must therefore look behind the plain language of the statute to other factors, again, keeping in mind that the primary goal is to give effect to legislative intent.

One such factor is that the most natural meaning of the word "subcontractor" simply does not denote the employees of a contractor. *See generally* 1 Pa.C.S. § 1903(a) (indicating that statutory words should be construed according to their common usage). Rather, a subcontractor is generally understood to be a person or business "who performs for and takes from the prime contractor a specific part of the labor or material requirements of the original contract, *thus excluding ordinary laborers and materialmen." Clifford F. MacEvoy Co. v. United States for Use & Benefit of Calvin Tomkins*, 322 U.S. 102, 109, 64 S.Ct. 890, 894, 88 L.Ed. 1163 (1944) (emphasis added). Consistent with such an understanding, this Court has uniformly held that a contractor's employees do not constitute subcontractors covered by mechanics' lien legislation.[10] This is especially significant because the official legisla-

10. *See Harlan v. Rand*, 27 Pa. (3 Casey) 511, 515 (1856) ("Yet [a contractor] cannot bind [the building] to the journeymen and labourers whom he is always presumed to employ for such work; for they are ... not considered as working on the credit of the building, but on faith in

tive comments indicate that the Court's decisional law overlay in this respect was meant to persist. *See* 49 P.S. § 1201, Comment—Joint State Government Commission 1964 Report, Subdivision (5) ("Prior decisional law that laborers are not subcontractors, even though employed by a contractor, remains unchanged."); 49 P.S. § 1303, Comment—Joint State Government Commission 1964 Report, Subdivision (a) ("This subsection ... declares existing decisional law and ... has been placed in Section 303 as a caveat.").[11] Hence, the Legislature's choice of the word "subcontractor," as opposed to "employee," together with our precedent and the Commission's commentary, all militate against an interpretation whereby any employee of a contractor is considered a "subcontractor."

[7] The Legislature may have sought to ensure the continuation of the same restrictions on the term "subcontractor" as were already understood to exist, because, as recited, the organic law then in effect prohibited statutes authorizing the extension of liens or providing or changing methods for the collection of debts. *See* PA. CONST. art. III, § 7 (1874). Although that provision has since been repealed, its vitality at the time the 1963 Act was passed suggests that the act was not intended to extend the class of lien claimants. The Legislature is presumed not to intentionally pass unconstitutional laws, and courts give statutes a constitutional interpretation if that is reasonably possible. *See Fluke v. Lang*, 283 Pa. 54, 58, 128 A. 663, 664 (1924). In *Fluke*, this Court determined that the "apparently broad language" of a clause

their employer."); *Guthrie v. Horner*, 12 Pa. (2 Jones) 236, 237 (1849) ("[O]ur mechanics' lien law never did ... contemplate that every man who was hired by a contractor to work at a building had a right to file a lien for his wages."); *Jobsen v. Boden*, 8 Pa. (8 Barr.) 463, 463 (1848) (noting that "a journeyman mechanic employed in working on a building, under the original contractor or master-mason, [may] not file a lien against the erection ... notwithstanding the general or comprehensive words of the statute, which, taken literally, would seem to include every grade and class of workmen").

11. Although these official comments are not law, they may be given weight in the construction of the statute as they provide evidence of legislative intent. *See Young v. Kaye*, 443 Pa. 335, 348 n. 3, 279 A.2d 759, 765 n. 3 (1971).

in the 1901 mechanics' lien law must be limited to ensure that it did not violate then-Article III, Section 7. *Id.* As *amicus* cogently states, "[c]onsistent with the *Fluke* decision, it should be presumed that the 1963[Act], enacted prior to the 1968 Pennsylvania Constitution, would necessarily have to be in compliance with the prior iterations of the Pennsylvania Constitution adopted in 1874[.]" Brief for Amicus, at 20. The 2006 revision to the definition of "subcontractor" is not directly pertinent in this regard, as it only increases the level of potential subcontractor claimants by one or more tiers, but does not otherwise alter the fundamental criteria needed to qualify as a subcontractor in the first instance. *Accord id.* at 16 n. 2.

As well, we presume that the Legislature had some reason for including Section 303(a) as part of the 1963 version of the act. *See* 1 Pa.C.S. § 1922(2) (reflecting a presumption that the General Assembly intends all aspects of a statute to have some effect). In particular, the Legislature must be assumed to have had in view some actual class of "person[s who] furnish[ ] labor or materials to an improvement," but who were not intended to qualify as contractors or subcontractors. If all of a contractor's employees were automatically deemed to be subcontractors, it is difficult to imagine who this class of persons might be. Here again, the official comment to Section 201(5) supplies the answer: "laborers are not subcontractors even though employed by a contractor[.]" [12]

Finally, it is proper to consider the consequences of different interpretations. *See* 1 Pa.C.S. § 1921(c)(6); *see also id.* § 1922(1) (reflecting that the General Assembly does not

---

12. We are not persuaded by the Trustees' suggestion that only day laborers working without a contract were meant to be excluded from the statute's definition of subcontractor. *See* Brief for Appellees, at 51. This principle is not reflected in the cases on which the Trustees rely for support, *see, e.g., Boden,* 8 Pa. (8 Barr.) at 463 (reflecting that the contractor and the plaintiff had agreed on the essential terms of employment); *Harlan,* 27 Pa. (3 Casey) at 515–16 (indicating that, under the statute then in effect, lien rights extended only to general contractors and their direct subcontractors, even where the claimant was employed pursuant to a contract with the subcontractor), nor is it reflected in our application of the principles of statutory construction, as reflected above.

intend an unreasonable result). Pennsylvania permits a sub-contractor to file a lien claim directly against the property, even if the owner is not in default. *See* 49 P.S. § 1301. Such a lien may subsume "all debts" owed to the subcontractor for labor or materials. *Id.* Although the legislative body has thus chosen to permit a property owner to be held responsible to ensure that subcontractors are paid, *see supra* note 9, construing the class of claimants to include all of a contractor's employees would force private property owners to become guarantors of contractors' general employment obligations and create an entirely new class of "subcontractors," thus exposing the subject property to significantly increased liability. This Court has previously commented that such a regime would be burdensome to the undertaking of new construction. *See Jobsen,* 8 Pa. (8 Barr.) at 465 ("This restricted construction seems to be absolutely necessary to the safety of the proprietors of newly-erected buildings.... [T]heir property is exposed to a double lien for the same work done and materials furnished; one in favour of the contractor ... and another to secure the master-workmen employed by him. Were the plaintiff's construction of the statute admitted, to these would be superadded the lien of every individual workman engaged by the principal.... This would soon be felt as intolerable."); *cf.* 73 AM.JUR. *Statutes* § 179 ("Statutes are generally subject to a strict construction where they interfere with private property rights or are in derogation of rights of individual ownership[.]").

In light of the above, we believe that it would be improper to endorse such a change absent legislation that more clearly evinces that intent. Particularly inasmuch as the evidence that we do have, as summarized above, points mostly in the opposite direction, we disagree with the Trustees' position to the extent they suggest that the Legislature intended for a contractor's employees to be considered "subcontractors" by virtue of the definitional section of the 1963 Act.[13]

13. The parties agree that the union workers were Contractor's employees and the Trustees do not argue that such workers were subcontractors on any other basis. Indeed, the CBAs refer to Contractor through-

■ Turning to the Superior Court's consideration of contracts implied in fact, Developer initially maintains that, since the Trustees waived this argument, the intermediate court exceeded its scope of review by ruling on the issue. *See Steiner v. Markel,* 600 Pa. 515, 522, 968 A.2d 1253, 1257 (2009) ("Where the parties fail to preserve an issue for appeal, the Superior Court may not address that issue *sua sponte.*"). Developer alternatively submits that the Superior Court erred in its substantive analysis in two interrelated ways. First, according to Developer, the court relied on the collective bargaining agreements to find an implied contract, whereas none of the authority it cited supports an implied-contract theory based on an express contract. Second, Developer contends that any implied contract that the intermediate court found cannot have been valid in any event because it was wholly lacking in consideration. In this latter respect, Developer posits that all of the actions performed by the parties in relation to the construction project—including Contractor's hiring of union members, the union workers' provision of labor and bricklaying services, and Contractor's responsibility to pay compensation as agreed upon—were undertaken pursuant to obligations already existing by virtue of the CBAs. Developer references *Cohen v. Sabin,* 452 Pa. 447, 307 A.2d 845 (1973), for the precept that "performance of that which one is already legally obligated to do is not consideration sufficient to support a valid agreement," *id.* at 453, 307 A.2d at 849; *accord In re Commonwealth Trust Co.,* 357 Pa. 349, 354, 54 A.2d 649, 651 (1947) ("Where a legal obligation exists, a cumulative promise to perform it, unless upon a new consideration, is a nullity."), *quoted in* Brief for Appellant, at 26, and ultimately concludes that under this precedent a valid implied-in-fact contract cannot have been formed.

out as "Employer" and the workers as Contractor's "employees." Thus, it is apparent that the CBAs were never intended to constitute "subcontracts" between Contractor and the Unions. Instead, they constitute agreements created for the benefit of a class of third-party union members and entered into in anticipation of Contractor's labor needs that might arise in the future.

The Trustees initially deny that the Superior Court was precluded from undertaking the inquiry. They distinguish *Steiner* by arguing that the decision only prohibits appellate courts from considering causes of action that were not pled, but it does not prevent them from relying on new legal theories to support a cause of action that appears in the complaint. In this respect, the Trustees argue that they were not required to identify all theories that might support their claim based on the facts as alleged. More particularly, they reason that such facts adequately support the implied-contract formulation that the Superior Court fashioned as a basis for concluding that the cause of action for enforcement of a mechanics' lien claim should not have been dismissed on preliminary objections.

"[T]he question presented by [a] demurrer is whether, *on the facts averred,* the law says with certainty that no recovery is possible." *Bilt–Rite Contractors, Inc. v. The Architectural Studio,* 581 Pa. 454, 461, 866 A.2d 270, 274 (2005) (emphasis added).[14] It is thus improper for a reviewing court to overrule a demurrer based on legal theories that are untethered to the factual basis for liability as alleged by the plaintiff. *See Steiner,* 600 Pa. at 527, 968 A.2d at 1260 ("The courts should not recast a pleading in a way not intended by the parties."). This type of review subjects defendants to shifting theories of liability that they cannot anticipate from the face of the pleading. Although the rules of civil procedure are to be liberally construed, *see* Pa.R.C.P. 126, the complaint must nonetheless apprise the defendant of the claim being asserted and summarize the essential supporting facts.[15] In

---

**14.** Pennsylvania is a fact-pleading state. *See McShea v. City of Phila.,* 606 Pa. 88, 96, 995 A.2d 334, 339 (2010).

**15.** *See McShea,* 606 Pa. at 98, 995 A.2d at 340; *Steiner* 600 Pa. at 526–27, 968 A.2d at 1260; *Line Lexington Lumber & Millwork Co. v. Pa. Publ'g Corp.,* 451 Pa. 154, 162, 301 A.2d 684, 688 (1973); *Landau v. W. Pa. Nat'l Bank,* 445 Pa. 217, 225, 282 A.2d 335, 339 (1971). *See generally* C.J.S. *Pleading* § 94 (2013) (stating that "the complaint is calculated to prevent surprise," and noting, in this respect, that its purpose is to state the facts comprising the cause of action on which the plaintiff relies, so as to enable the defendant to prepare a defense and meet the allegations with appropriate evidence); 61A Am Jur. 2d *Plead-*

*Seebold v. Prison Health Services, Inc.*, 618 Pa. 632, 57 A.3d 1232 (2012), for example, the plaintiff—a prison guard—alleged that prison doctors had breached a duty to warn her directly that an inmate had an infectious disease. On appeal from the sustaining of a demurrer, the plaintiff argued that the case should have proceeded to fact-finding because a jury might have concluded that advising the inmate on how to avoid spreading the infection would have discharged the doctor's alleged duty to third parties. This Court rejected the plaintiff's belated attempt to alter her theory of liability. *See id.* at 657–59, 57 A.3d at 1248.

Here, all of the allegations appearing in the Trustees' statements of mechanics' lien, and in their complaints, reference the CBAs as such, and the actions undertaken pursuant to those agreements, as the basis for liability.[16] Additionally, and as noted, the Trustees' Rule 1925(b) statements make no

*ing* § 125 (2013) ("Under fact pleading, the complaint must not only apprise the defendant of the asserted claim, but must also synopsize the essential facts to support the claim.").

**16.** The allegations in the Statement of Mechanics' Lien filed by the Laborers Combined Funds of Western Pennsylvania are illustrative. That documents states, in relevant part:

4. The Contractor ... and the [Union] *entered into a collective bargaining agreement ("CBA")* ..., whereby Contractor agreed to utilize the services of Union members for work performed by the Contractor within the jurisdiction of the Union *as described in the CBA.* ...

5. *Pursuant to the CBA,* Contractor was to utilize the skilled trades of the Union members for each [p]roject Contractor performed or undertook.

6. *Pursuant to the CBA,* the Contractor was to pay health, welfare, retirement and/or fringe benefits ("Contributions") to Claimant for each hour of labor performed by the Contractor's Union members *in accordance with the rates set forth in the CBA.*

7. *Pursuant to the CBA,* the Trust Agreement incorporated into the CBA, and the applicable law, Claimant is the authorized agent on behalf of Union members to collect the Contributions which were to be paid by the Contractor *in accordance with the CBA.*

8. Claimant seeks unpaid Contributions for members of the Union who furnished skilled trades to the Contractor....

9. *Pursuant to the CBA,* Claimant was to be paid in accordance with the monthly reports prepared by the Contractor....

Statement of Mechanics' Lien (Laborers), at 2, ¶¶ 4–9, *reproduced* in R.R. 57a–58a (emphasis added).

mention of a supposed implied contract between Contractor and the Unions; instead, they are consistent with the complaints in relying solely on the CBAs as the predicate for the Trustees' purported subcontractor status. *See Bricklayers of W. Pa. Combined Funds, Inc. v. Scott's Dev. Co.*, No. 12533–2009, Concise Statement of Matters Complaint of on Appeal, at ¶¶ 5, 8, 11, *reproduced* in R.R. 260a–261a; *Laborers Combined Funds of W. Pa. v. Scott's Dev. Co.*, No. 12514–2009, Concise Statement of Matters Complaint of on Appeal, at ¶¶ 5, 8, 11, *reproduced* in R.R. 265a–266a.

In this regard, it may be noted that a contract implied in fact "arises when the intention of the parties is not expressed, but an agreement in fact creating an obligation is implied or presumed from their acts[.]" *In re Montgomery's Estate*, 299 Pa. 452, 457–58, 149 A. 705, 707 (1930).[17] The "not expressed" criterion is presently significant because, as explained, all of the parties' actions and obligations *were* alleged to have been undertaken pursuant to intentions that were expressed in the CBAs: in the event Contractor needed workers for a construction project, it was to hire union members to perform the job; the union workers furnished satisfactory skill and labor for the project in question, for which they were contractually entitled to have employee-benefit contributions paid to the Trustees; and the alleged breach occurred when Contractor failed to make the benefit payments as required by the CBAs. Although the CBAs were executed before the specific construction project on Developer's land was contemplated, they stated the parties' intentions and controlled their obligations relative to the project, as the Trustees forcefully argue. *See* Brief for Appellees, at 41–42.

**17.** *See also Liss & Marion, P.C. v. Recordex Acquisition Corp.*, 603 Pa. 198, 210, 983 A.2d 652, 659 (2009) ("A contract implied in fact is an actual contract which arises where the parties agree upon the obligations to be incurred, but their intention, instead of being expressed in words, is inferred from [their] acts in the light of the surrounding circumstances." (quoting *Elias v. Elias*, 428 Pa. 159, 161, 237 A.2d 215, 217 (1968))); *accord* 1 WILLISTON ON CONTRACTS § 1:5 (4th ed. 1990) ("[A]n implied-in-fact contract arises from mutual agreement and intent to promise, when the agreement and promise have simply not been expressed in words"); 17A AM.JUR. *Contracts* § 12 (2013) (same).

Thus, no additional obligations needed to be assumed, and no additional promises needed to be made, for the CBAs to be fully applicable with respect to the construction project—nor were any actions or requirements alleged to have arisen in relation to the project separate and apart from the express provisions contained in the CBAs. Therefore, the concept that implied contracts were formed between the Unions and Contractor in relation to the improvement on Developer's property is too attenuated to withstand scrutiny. Put simply, the complaints cannot reasonably be interpreted as alleging the existence of implied contracts between the Unions and Contractor, or as summarizing the essential facts to support such a contention. *See generally McShea,* 606 Pa. at 98, 995 A.2d at 340 ("Where a pleading is straightforward, such as here, there can be no reworking of the claim so as to create a different theory of recovery."). The Superior Court, for its part, simply "recast [the] pleading[s] in a way not intended by the parties." *Steiner,* 600 Pa. at 527, 968 A.2d at 1260.[18]

Even if implied contracts between Contractor and the Unions could be discerned from the averments, the Trustees never claimed to attain subcontractor status by standing in the shoes of the Unions. *See supra* note 5; *accord* Brief for *Amicus,* at 10 ("[T]he unions are not the claimants in these cases, nor do they claim to be owed anything."). The substantive allegations in the mechanics' lien claims and the complaints to enforce them are uniformly phrased in terms of the "union members" or "members of the union." Hence, the Trustees only asserted that union *workers* were denied their employee benefit payments, and made no contention on behalf of the Unions as such. Although the Superior Court over-

18. We do agree with the Superior Court that the Unions did not become subcontractors under the CBAs themselves. Although the intermediate court reached this conclusion because the CBAs do not specifically mention the construction project on Developer's property, we note that the Unions did not perform any work for Contractor. Rather, and as stated, the CBAs governed the terms of employment whenever Contractor might need workers for a construction project, and the union members—who did perform the work—were employees of Contractor, not the Unions. *Accord Nat'l Elec. Indus. Fund v. Bethlehem Steel Corp.,* 296 Md. 541, 463 A.2d 858, 860 (1983).

looked this distinction in formulating its implied-contract theory, we find the difference significant. The General Assembly has provided that "[n]o lien shall be allowed in favor of any person other than a contractor or subcontractor[.]" 49 P.S. § 1303(a). The precision thus required in regard to the filing of mechanics' liens cannot simply be ignored, nor can the Unions and the union workers be considered legally interchangeable for such purposes. As the Trustees did not assert a debt due and owing to the Unions, any implied contracts with the Unions would be insufficient in the circumstances to authorize the Trustees to file mechanics' liens to secure the union workers' benefits.

In summary, we conclude that the union workers were not subcontractors, and the Trustees, by corollary in their representative capacity, were not entitled to file a lien claim on the workers' behalf. Although the 1963 Act is intended to protect subcontractors who suffer harm occasioned by the primary contractor's failure to meet its obligations, we have determined that the Legislature did not intend the term "subcontractor" to subsume employees of the primary contractor. Furthermore, the Superior Court erred in overturning the demurrers based on an implied-in-fact contract theory.

The order of the Superior Court is reversed, and the case is remanded for reinstatement of the county court's order sustaining Developer's preliminary objections in the nature of a demurrer.

Former Justice ORIE MELVIN did not participate in the decision of this case.

Chief Justice CASTILLE, Justices EAKIN, BAER, TODD and McCAFFERY join the opinion.