[J-48-2014] [MO: Saylor, J.]

# IN THE SUPREME COURT OF PENNSYLVANIA
## MIDDLE DISTRICT

| | |
|---|---|
| IN RE: NOMINATION PETITION OF ROBERT GUZZARDI FOR THE REPUBLICAN NOMINATION FOR GOVERNOR OF PENNSYLVANIA IN THE REPUBLICAN PRIMARY OF MAY 20, 2014 | : No. 29 MAP 2014<br>:<br>: Appeal from the order of the<br>: Commonwealth Court dated April 15, 2014<br>: at No. 158 MD 2014<br>:<br>: SUBMITTED:  April 21, 2014<br>: |
| APPEAL OF:  RICHARD W. STEWART, ROBERT K. ROBINSON, RICHARD TEMS AND DONNA M. COSMELLO | :<br>:<br>: |

## DISSENTING OPINION

**MADAME JUSTICE TODD**                    **DECIDED:  May 1, 2014**
                                                               **OPINION FILED:  August 18, 2014**

I join Justice Baer's Dissenting Opinion.  I write separately to address two points raised by the majority.

First, the majority notes that "[s]ince the present situation is vastly different from the 'natural disaster, fire, or bomb threat' scenarios envisioned by the dissent, we do not address those here."  Majority Opinion at 9 n.5 (citation omitted).  Admittedly, an appeal for *nunc pro tunc* relief because "I was misinformed" (as herein) is "different" from an appeal for *nunc pro tunc* relief because, for example, a fire prevented access to the filing office, as the latter claim appears to present a much stronger case for granting *nunc pro tunc* relief than the former.  But, significantly, from the standpoint of whether equity is available to provide the requested relief, the claims are the same.  If, as the majority holds, equity is not available under its construction of the election statute, the particular details underlying the claim — be it official misinformation, or disaster — are irrelevant.  Cf. Majority Opinion at 10 (conceding that "our enforcement of the governing

statutory fatal-defect rule was dispositive of this appeal"). Thus, an appeal to equity such as made in this case and an appeal to equity because of a fire at the filing office are emphatically not "vastly different" — they are, in point of fact, identical legal claims. As a result, the majority's contention that "we do not address those [claims] here" rings hollow, as I perceive no principled basis — and the majority offers none — for categorically distinguishing between the instant claim for *nunc pro tunc* relief and one based on the "natural disaster, fire, or bomb threat" scenarios proffered by Justice Baer.[1] Under the majority's analysis, all are barred.

Relatedly, the majority goes on to state: "We reiterate, however, that judicial enforcement of the fatal-defect rule extends only to the limits of the federal and state Constitutions and recognize that such enforcement in impossibility scenarios may test such boundaries." Id. at 9 n.5. I take this to mean that the majority recognizes that its interpretation of the statute may be so unfair in its application in certain scenarios that it could be unconstitutional. On the majority's terms, I would agree. However, this constitutional-safety-value tack reveals another problem with the majority's approach, in addition to those identified by Justice Baer.

A cardinal presumption of statutory interpretation is that the legislature does not intend to violate the Constitution. 1 Pa.C.S.A. § 1922(3) ("[T]he General Assembly does not intend to violate the Constitution of the United States or of this Commonwealth."); Bricklayers of W. Pennsylvania Combined Funds, Inc. v. Scott's Dev. Co., 90 A.3d 682, 692 (Pa. 2014) ("The Legislature is presumed not to intentionally pass unconstitutional laws, and courts give statutes a constitutional interpretation if that is reasonably possible."). In my view, the majority's interpretation of the fatal defect language violates

---

[1] If the majority's distinction is meant to signal that its fatal defect interpretation somehow may not be as absolute as it appears to be — i.e., that it contemplates that some equity claims may be more worthy than others — it should say so explicitly.

this precept. In addition to the natural disaster, fire, or bomb threat scenarios suggested by Justice Baer, I would add the much more prosaic power outage, snow storm (filings are due in late winter), or water line break. In brief, short of negligence, there are any number of highly foreseeable events that could hamper or prevent the timely filing of a statement of financial interests. Surely, the legislature must have been aware of such possibilities in crafting the fatal defect language. However, by concluding the legislature intended to preclude equitable relief in *toto*, the majority nearly guarantees a constitutional contravention, flouting the above precept of statutory construction.

In this regard, I do not mean to suggest the majority's interpretation of the fatal defect language is unfounded: such language can reasonably be viewed as disallowing equitable relief. At the same time, I regard Justice Baer's alternative interpretation — that the fatal defect language was added to reverse this Court's *dilution* of the filing requirement in State Ethics Comm'n v. Baldwin, 445 A.2d 1208 (Pa. 1982), and thus is unrelated to restricting a court's ability to grant equitable relief — also to be eminently reasonable. Yet, critically, Justice Baer's interpretation has the advantage of avoiding the constitutional infirmity to which the majority alludes, and so comports with the presumption against unconstitutional interpretations. Given the panoply of highly foreseeable scenarios which may result in a non-negligent failure to timely file a statement of financial interests, I would interpret the fatal defect language in a manner which avoids, not presumes, constitutional impediments.